[No. 7584.   Decided May 15, 1909.]

F. W. BURDICK et al., Appellants, v. GEORGE W. KIMBALL et al., Respondents.[1]

TAXATION—SALE OF PROPERTY—REDEMPTION—BY "MINOR HEIRS"—STATUTES—CONSTRUCTION.  Laws 1899, p. 298, permitting any "minor heir" to redeem land sold for taxes does not apply to a minor for whom land had been deeded in trust and who had not inherited the property, as the statute is clear, and the history of the act shows "heirs" to have been advisedly used in order to limit the right to redeem to those who take by descent (Per Mount, J., with whom Crow, Dunbar, and Parker, JJ., concur; Chadwick, J., dissenting, with whom Rudkin, C. J., Fullerton, and Gose, JJ., concur).

SAME—TITLE IN TRUSTEE—REDEMPTION BY MINOR CESTUI QUE TRUST.  Where the full legal title to land is in a trustee for a minor,

[1]Reported in 101 Pac. 845.

the minor cannot redeem the land from tax sale under Laws 1899, p. 298, his remedy being against the trustee (Per Chadwick, J., Rudkin, C. J., Fullerton, and Gose, JJ., concurring).

Appeal from a judgment of the superior court for King county, Morris, J., entered May 1, 1908, upon sustaining a demurrer to the complaint, dismissing an action to redeem real property from a tax sale. Affirmed.

*Todd, Wilson & Thorgrimson*, for appellants, contended that the statute is remedial and should be liberally construed. Cooley, Taxes, p. 532; Black, Tax Titles, p. 350; Black, Interpretation of Laws, p. 329; 26 Am. & Eng. Ency. Law (2d ed.), p. 676; *Dubois v. Hepburn*, 10 Peters 1, 9 L. Ed. 325; *Karr v. Washburn*, 56 Wis. 303, 14 N. W. 189; *Minnesota Debenture Co. v. Dean*, 85 Minn. 473, 89 N. W. 848. It is clear that the word "heir" was inadvertently used, and that the intent was to protect all minors, within general rules of interpretation. Black, Interpretation of Laws, pp. 35, 48, 60, 83, 87, 100, 104; 26 Am. & Eng. Ency. Law (2d ed.), pp. 597, 601, 602, 646, 648; Sutherland, Statutory Construction, §§ 237, 246, 253, 292; *Seattle v. Seattle & M. R. Co.*, 50 Wash. 132, 96 Pac. 958.

*Frank S. Griffith* and *Morris B. Sachs*, for respondents. The courts cannot depart from the meaning clearly conveyed by unambiguous words in a statute. 26 Am. & Eng. Ency. Law (2d ed.), p. 597; *Stevens v. Casady*, 59 Iowa 113, 12 N. W. 803; *Knipe v. Austin*, 13 Wash. 189, 43 Pac. 25, 44 Pac. 531; *State ex rel. Chamberlin v. Daniels*, 17 Wash. 111, 49 Pac. 243; Sutherland, Statutory Construction, § 238; 4 Words & Phrases Judicially Defined, p. 3241. In any event the title was in the trustee. *Kulp v. Kulp*, 51 Kan. 341, 32 Pac. 1118, 21 L. R. A. 550; *Thompson v. Price*, 37 Wash. 394, 79 Pac. 951.

MOUNT, J.—This action was brought to redeem certain real estate from a tax sale. The trial court sustained a de-

murrer to the complaint, and dismissed the action. Plaintiffs appeal.

The facts shown by the complaint are as follows: On June 30, 1893, the father and mother of the minor Bernhart Brant Bartels deeded the property in controversy to one E. M. Carr, in trust for the minor. The trust deed authorized the trustee to sell the property and convey an absolute title in fee, to change the form of the property at any time, and to invest the proceeds, "it being the intention of the said parties of the first part to give full power to said trustee to deal with the said property as his own, and imposing full confidence in his honesty and discretion in relation to said trust." This deed was duly recorded in King county, where the land is located. At the time the deed was made, taxes were due and unpaid for the years 1878 and 1893. Afterwards taxes were permitted to go delinquent for the years up to and including 1896. In May of 1898, the treasurer of King county issued a certificate of delinquency to one F. W. Comstock for these delinquent taxes. In March, 1901, Mr. Comstock brought an action in the superior court of King county to foreclose his certificate of delinquency. Personal service of summons and complaint in that action was made upon the trustee, in whose name the title stood. A judgment of foreclosure followed in due course, and the property was sold to Mr. Comstock, who afterwards deeded it to George W. Kimball. The minor, now nearly sixteen years of age, brings this action by his guardian and trustee. He alleged a tender of the amount of taxes, penalty, and interest due. No question is made upon the regularity of the tax foreclosure proceedings. The lower court sustained the demurrer, upon the ground that the minor, not having inherited the property, was not authorized by the statute to redeem it from tax foreclosure sale. This is the only question presented.

The statute relating to the subject is as follows:

"If the real property of any minor heir, or any insane person, be sold for nonpayment of taxes or assessments, the

same may be redeemed at any time after sale and before the expiration of one year after such disability has been removed upon the terms specified in this section," etc. Laws 1899, p. 298; Pierce's Code, § 8696.

Appellants argue that the word "heir," as used in the statute, was used inadvertently by the legislature, and should be excluded, so that the statute would apply to all minors; that the statute, being remedial in its nature, should receive a liberal construction. We might readily agree to the last position, and also the first, if we were satisfied that the word "heir" had been used inadvertently, but

"When the meaning of a statute is clear, and its provisions are susceptible of but one interpretation, that sense must be accepted as the law; its consequences, if evil, can only be avoided by change of the law itself, to be effected by the legislature and not by judicial construction." Sutherland, Statutory Construction, § 238.

In order to determine whether the word "heir" was used inadvertently or not, it may be well to look to the history of this statute. In 1891, the legislature of this state passed an act relating to the assessment and collection of taxes, and there provided: .

"Sec. 107. Minors, insane persons, idiots, or persons in captivity, or in any country with which the United States are at war, having an estate in or lien on lands sold for taxes, may redeem the same within two years after such disability shall cease." Laws 1891, p. 321.

At the next session of the legislature, in 1893, a new act relating to the same subject was passed, and prior acts were expressly repealed. Section 121, page 378, of this act provides:

"If the real property of any minor heir or insane person be sold for nonpayment of taxes or assessments the same may be redeemed at any time after sale and before the expiration of one year after such disability has been removed upon the terms specified in this section," etc.

It will be noticed that, in 1891, certain classes of persons might redeem; viz., minors, insane persons, idiots, persons in

captivity, or persons in a foreign country at war with the United States. These persons were required to redeem within two years after the disability should cease. The act of 1893 changed this provision, by limiting the time to within one year after the removal of the disability, and also making it apply only to minor heirs and insane persons, excluding idiots and persons in captivity and persons in a foreign country at war with the United States from the benefit of the provision. This section has since been amended or reenacted by the Laws of 1895, page 523; by the Laws of 1897, page 184; and, also, by the Laws of 1899, page 298. But the provision under consideration has not been changed in substance since its enactment in 1893. The change from minors, insane persons, idiots, and persons in captivity, to minor heirs and insane persons, is such a radical change that we cannot believe the legislative body made the change inadvertently. The fact that the word "heirs" was inserted after "minors" shows a clear intention to modify and limit the class of minors who might redeem from tax sale. There may be no good reason for permitting a minor to redeem property which he inherits, and refusing him the same right to property acquired by grant or purchase. The policy of the law rests entirely with the legislature. Courts may not declare the policy; they simply construe the law. As was said by this court in *Knipe v. Austin*, 13 Wash. 189, 43 Pac. 25, 44 Pac. 531, in construing an act relating to mortgages:

"It may be that cases of hardship will arise under this law; but courts have nothing to do with the policy or impolicy, the justice or injustice of legislative enactments. The right to redeem at all is a right granted by the statute. Without a statutory enactment, the right would be cut off absolutely. It is a right that is purely *ex gratia*, and the legislature in conferring this right could confer it burdened with any conditions which it saw fit to impose."

This language is particularly applicable to the case at bar.

We are of the opinion that the lower court properly con-

strued the statute in question, and the judgment must therefore be affirmed.

CROW, DUNBAR, and PARKER, JJ., concur.

CHADWICK, J. (concurring)—I concur in the result, but not on the grounds upon which the opinion of the majority rests. Whether in the form of the act of 1891 or in the form of the act of 1893, I believe that the intent of the legislature was to relieve all those under the legal disability of infancy, and not to except a class within a class. The strict construction adopted bv the majority would permit a redemption by a minor who took by inheritance, and deny that benefit to one who took by will or by deed. It is true that a strict definition of the words employed would bear out the conclusion of the majority; but, aside from the considerations advanced by Judge Mount, there are other elements to be considered in the construction of statutes. The words employed should be construed in the light of the whole context of the law, its subject-matter, its effect and consequences, its spirit, and its reason. Of the effect and consequences, and the spirit and reason of a law, Blackstone says:

"As to the *effects* and *consequence*, the rule is, that where words bear either none, or a very absurd signification, if literally understood, we must a little deviate from the received sense of them. . . . But, lastly, the most universal and effectual way of discovering the true meaning of a law, when the words are dubious, is by considering the *reason* and *spirit* of it; or the cause which moved the legislator to enact it." 1 Blackstone's Commentaries, p. 61.

It appears to me that, the reason of the law being to give the right of redemption to persons under a legal disability, it is immaterial how the property was acquired, and the consequences and reason of the law should not be disregarded in order to give effect to the use of a word. While it is true that the right of redemption is purely *ex gratia*, I am not willing to admit that the act under consideration limits the right to those who take by descent rather than by purchase. In the

case at bar, however, by the terms of the trust, Carr held the full legal and equitable title. There was no right or interest reserved to the minor that ran with the land. His relation was with his trustee and was personal. The terms of the trust are thus defined:

"The trustee shall have the power to change the form of the property at any and all times and to sell the same and to invest the proceeds of the same according to his discretion; to change the form of investment from time to time according to his discretion, and the sale or conveyance of the property, or any part thereof, made by him shall vest in the grantee absolute title in fee, unencumbered by any trust whatever, and no purchaser from the trustee of this property, or any part thereof, or of any property which may be acquired or held in trust hereunder, shall be required to look to the application which may be made by the trustee of the purchase money, and no purchaser of any of the above described property, or of any property in which the proceeds of any of the above described property may be vested, shall be under any responsibility whatever as to the application of the proceeds of any of the purchase price of any of said lands. It being the intention of the said parties of the first part to give full power to the said trustee to deal with the said property as his own and imposing full confidence in his honesty and discretion in relation to said trust."

Therefore, if Carr conveyed the land or allowed it to pass from him by operation of law, in abuse of his trust, the minor's remedy is against his trustee, and not against the one who has obtained it by a strict compliance with the law designed to promote the gathering of the public revenues. The case falls within the principle announced in the case of *Thompson v. Price*, 37 Wash. 394, 79 Pac. 951, and for that reason should be affirmed.

RUDKIN, C. J., FULLERTON, and GOSE, JJ., concur with CHADWICK, J.