### ZANE–CETTI et al. v. CITY OF FORT WORTH et al.  (No. 6814.)*

(Court of Civil Appeals of Texas. Austin. Dec. 17, 1924. Rehearing Denied Jan. 28, 1925. Motion to File Second Motion for Rehearing Overruled Feb. 20, 1925.)

**1. Municipal corporations ⬅73 — Power to control taxes not granted to qualified voters of city by Home Rule Amendment held reserved to Legislature.**

Since prior to adoption of Home Rule Amendment of Const. art. 11, § 5, Legislature had power to regulate, levy, and collect taxes in cities of more than 5,000, powers not granted to qualified voters of such cities by Home Rule Amendment, and the Enabling Act (Acts 33d Leg. [1913] c. 147; [Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a–1096i]), are reserved to the Legislature.

**2. Schools and school districts ⬅103(2)—Increase in school tax rate held not an "amendment" to charter under Home Rule Amendment.**

The increase of rate of school taxes, though submitted to qualified voters of city of over 5,000, as an amendment to city charter, held not an "amendment" to the charter within Home Rule Amendment of Const. art. 11, § 5, but only an election to increase school tax rate, governed by Rev. St. art. 2876, as amended by Act March 30, 1917 (Acts 35th Leg. c. 169, § 1; Vernon's Ann. Civ. St. Supp. 1918,

art. 2876), and should have been submitted to only the qualified taxpaying voters.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Amend— Amendment.]

On Motion for Leave to File Second Motion for Rehearing.

**3. Municipal corporations ⬅73 — Legislature held empowered to regulate by general laws increase in school tax rate of cities within Home Rule Amendment.**

The Home Rule Amendment of Const. art. 11, § 5, not being self-executing, and it vesting in Legislature express powers to legislate generally upon subject of school tax rate, held, that Legislature is not circumscribed in its power to regulate by general law in what manner and by what vote a city within Home Rule Amendment may increase its school tax rate.

**4. Municipal corporations ⬅79—Cities within Home Rule Amendment held without power to negative legislative act concerning school tax rate, by charter amendment to increase rate.**

The Legislature having power, which it exercised by enacting Rev. St. art. 2876, as amended by Act March 30, 1917 (Acts 35th Leg. c. 169, § 1; Vernon's Ann. Civ. St. Supp. 1918, art. 2876), to regulate increase of school tax rates by cities of over 5,000 within the Home Rule Amendment, and to require such increase to be effected by majority vote of qualified taxpaying voters, a city cannot defeat such statute by a charter provision providing no method of changing school tax rate other than by charter amendment, which could be effected by majority of all qualified voters, thus in effect destroying power of Legislature.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit for injunction by Carl Zane-Cetti and others against the City of Fort Worth and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

I. H. Burney and A. J. Clendenen, both of Fort Worth, for appellants.

R. M. Rowland, R. E. Rouer, and Gillis Johnson, all of Fort Worth, for appellees.

BAUGH, J. Appellants, who were plaintiffs below, alleging that they were resident taxpaying citizens of Fort Worth, Tarrant county, Tex., and owners of real estate therein, sued to restrain the city of Fort Worth, its mayor and commissioners, and its tax assessor and collector, from levying and collecting for the year 1923 and subsequent years a tax of 86 cents on the $100 valuation of plaintiffs' property, on the ground that said tax was illegal and void. Plaintiffs' petition alleged, amongst other things, that on July 11, A. D. 1922, the city of Fort Worth, being then a city of more than 5,000 inhabitants, governed under a special charter granted to it by the Legislature in 1909, and desirous of amending its said charter as pro-

---

vided for under section 5, art. 11, of the Constitution of Texas, adopted on November 5, 1912, and commonly known as the "Home Rule Amendment," caused to be issued by proclamation of its mayor and commissioners, a notice of election, addressed to the qualified voters of the city of Fort Worth, advising them that on July 22d, such election would be held at which five proposed amendments to the Fort Worth charter would be submitted.

The proposed fifth amendment to its charter involved in this suit was alleged by plaintiffs to have been as follows:

"Fifth Proposition. Shall sections 14 and 15 of chapter XV of the existing charter of the city of Fort Worth be amended so as to hereafter read as follows:

"Sec. 14. *School Taxes, Rate of; Levy and Collection; Expenditures by Trustees.*—The board of commissioners of the city of Fort Worth shall have no discretion in fixing the rate at which taxes shall be assessed and levied each year for the benefit of public free schools, provided such rate does not exceed 86 cents on each $100.00 of value of the property subject to taxation, but shall assess and levy the rate fixed annually by the board of trustees of the independent school district of the city of Fort Worth up to and including the rate of 86 cents on $100.00 of the value of the property, subject to taxation, as aforesaid, and it shall become the duty of the board of commissioners, to annually levy and collect said taxes as other taxes are levied and collected, and said tax when collected shall be placed at the disposal of said board of trustees by paying over monthly to the treasurer of said board of trustees the amount collected for the purpose of the public free schools of Fort Worth, to be used for the maintenance, support and use thereof. Said authorized rate of 86 cents on the $100.00 shall be in addition to and independent of all other taxes provided for in this charter.

"Sec. 15. *School Taxes; School Board to Determine Rate.*—It shall be the duty of the board of trustees of the independent school district of the city of Fort Worth, to determine what amount of taxes, not exceeding 86 cents on each $100.00 of the value of the property subject to taxation, shall be necessary for the purpose, maintenance and use of the public free schools of the city of Fort Worth for each current year, and the repair, erection and purchase of buildings, and on or before the date upon which the board of commissioners is required by this charter to levy general taxes, said board of trustees shall certify to the said board of commissioners the rate of taxes to be levied for the school purposes, and it shall be the duty of said board of commissioners to levy said taxes."

Plaintiffs then alleged that said election was held; that said fifth proposition was adopted by a vote of 7,322 to 3,283; that the city commission declared same carried; and that they thereafter upon requisition of the board of school trustees of the independent school district of the city of Fort Worth, on August 31, 1922, levied said tax of 86 cents on the $100 valuation of property situated within said district. Plaintiffs then alleged that said levy was illegal and void because said election was submitted to others than taxpaying voters in violation of article 2876, R. S. 1911, as amended on March 30, 1917 (Acts 35th Leg. c. 169, § 1; Vernon's Ann. Civ. St. Supp. 1918, art. 2876), which reads as follows:

"The city or town council or board of aldermen of any city or commission of any city, town or village, whether incorporated under any act of the Congress of the republic or the Legislature of the state of Texas, or under any act of incorporation whatever, shall have power by ordinance to annually levy and collect such ad valorem taxes for the support and maintenance of public free schools and for the erection and equipment of public free school buildings in the city or town where such city or town is a separate and independent school district; provided that no such tax shall be levied until an election shall have been held, at which none but property tax payers, as shown by the last assessment rolls, who are qualified voters of such independent school districts shall vote and a majority of those voting shall vote in favor thereof. The proposition submitted may be for such a rate of ad valorem tax not exceeding such per cent. as may be voted by a majority vote of all votes cast at any such election. * * * *"

Plaintiffs further alleged that said proposed amendment to said charter was void because adopted in violation of section 5, art. 11, of the Constitution, which reads as follows:

"Sec. 5. Cities [and towns] having more than five thousand (5,000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under such charter shall contain any provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature of this state."

Plaintiffs further alleged:

"That the said proposed amendment so voted as proposition No. 5 at said special election held on July 22, 1922, did provide a special tax of 86 cents on $100, thereby greatly increasing the special tax which the said city of Fort Worth was authorized to levy under its then existing charter, and that the same was attempted to be done without submitting the said proposed special tax to the people at an election, at which only property tax payers resident in said city were permitted to vote, and said amendment so adopted, as hereinbefore set forth, was and is illegal and void."

Then followed allegations as to the levy of and threat by the tax assessor and collector of the city of Fort Worth to collect this increased tax of 86 cents on the $100 valuation of plaintiffs' property for the year 1923, and for future years, and a prayer that said tax be declared null and void, that its levy

and collection be enjoined, and for general relief.

To this petition defendants lodged a general demurrer and amongst others a fourth special exception as follows:

"Fourth Special Exception. Further specially excepting to said petition, defendants say the same is insufficient in law, because the only point made against the validity of the election and of the charter amendment adopted at such election is that qualified voters in the city who were not property tax payers were permitted to vote in 'such election, and said point is wholly without merit for the reason that under the Constitution and laws of this state all qualified voters in Fort Worth, regardless of whether they were taxpayers or not, were clearly entitled to participate in said election and vote for or against said charter amendment."

The trial court upon a hearing on January 25, 1923, sustained the general demurrer and said fourth special exception, the plaintiffs declined to amend, and judgment was thereupon rendered against them. From this judgment plaintiffs appeal.

The issue before us on this appeal is that stated in defendants' fourth special exception; that is, were all the qualified voters of the city of Fort Worth entitled to participate in said election, so far as same related to what was designated as the fifth amendment to the Fort Worth charter?

Sections 14 and 15 of chapter 15 of the charter, as they appeared before the proposed amendment, are not shown in the record. Nor does it appear just how much said proposed amendment increased the tax rate for school purposes. However, we think it reasonably appears from the pleadings that the only change in the charter attempted to be made by the proposed amendment thereto was an increase in the tax rate.

[1] Prior to the adoption of the Home Rule Amendment, the Legislature had the power to amend the charter of a city of more than 5,000 inhabitants by special act and to regulate the levy and collection of such taxes as were authorized by law. The Home Rule Amendment, however, with the Enabling Act passed thereunder (see Gen. Laws of Texas, Reg. Session 33d Leg., chap. 147, p. 307; Vernon's Sayles' Civil Statutes 1914, arts. 1096a–1096i) vested in cities of more than 5,000 inhabitants the power to adopt or amend their charter by majority of the qualified voters of such cities, subject to the limitations therein prescribed. It follows then, necessarily, we think, that such powers as were not granted to the "qualified voters" of such cities by the Home Rule Amendment were and are reserved to the Legislature, and that matters of regulation or control not so vested in the qualified voters of such cities by said section 5, art. 11, of the Constitution, are proper subjects of legislative action and control. Cohen v. City of Houston (Tex. Civ.

App.) 205 S. W. 761; Eastham v. Steinhagen, 111 Tex. 597, 243 S. W. 458.

[2] This brings us to the question of whether or not the fifth proposition submitted to the qualified voters of the city of Fort Worth, designated as an amendment to its charter, and the purpose of which was evidently to raise the school tax rate, was in fact an "amendment" to the charter within the legal meaning of that term as used in the Home Rule Amendment to the Constitution. If it was not, then such proposed amendment was undoubtedly subject to the provisions of article 2876, Revised Statutes 1911, as amended by section 1, chap. 169, Act of March 30, 1917 (see 1918 Supplement to Vernon's Sayles' Revised Civil Statutes), which required such election to be submitted, so far as the tax increase was concerned, to none but property tax payers, as shown by the last assessment rolls, who were qualified voters of such independent school district.

Actions of cities under the Home Rule Amendment to the Constitution have been frequently before the courts for review. The action of the city of Waco in extending its limits under its charter which was adopted pursuant to the Home Rule Amendment was attacked on the ground that such action was an amendment to its charter, and because it was had within two years after the charter was adopted it was alleged to be in violation of the express provisions of the Home Rule Amendment. City of Waco v. Higginson (Tex. Com. App.) 243 S. W. 1078. In that case the Commission of Appeals expressly held that such extension of the city boundaries, though accomplished by an election held for that purpose, was not an amendment to its charter, but that—

"The city of Waco merely exercised one of its charter powers in extending its limits on the occasion in question. It did not amend its charter. After the limits were extended, the charter provisions remained the same."

And this was true, even though the original charter may have prescribed the exact boundaries of the city.

A similar attack was made upon the action of the city of Beaumont both in extending its boundaries and in increasing its school tax rate. Eastham et al. v. Steinhagen et al., 111 Tex. 597, 243 S. W. 457. In that case, in addition to extending its boundaries, the city had, by two elections held for that purpose, increased its school tax rate in June, 1918, and again in September, 1919. At an election held on December 30, 1919, it adopted a new charter under the Home Rule Amendment. The elections of 1918 and September, 1919, were held under the old charter granted the city in 1909. The attack was made on the ground that in adopting the new charter which included the increased school tax rate, the city was in effect amending the old charter within two

years after the school tax elections, in violation of the express provisions of the Home Rule Amendment. In overruling this contention, the Supreme Court, speaking through Justice Greenwood, used the following language:

"With these provisions of the charter contemplating change in the school taxes and requiring the collection and disbursement of the taxes, at whatever rate authorized, the increases in the rate of taxation, for school purposes, accomplished by the elections of June, 1918, and September, 1919, did not alter, amend, or repeal the charter."

It is true that in that case said elections were specifically for the purpose of increasing the tax rate, and not designated as charter amendments; but we think the principle involved is the same as in the case before us. If the city of Fort Worth had held an election not submitted as an amendment to its charter, but for the express purpose of increasing its tax rate to not exceeding 86 cents on the $100 valuation of property, and under the provisions of said article 2876, as amended, there can be no doubt but that such increased tax could and would have been levied, collected, and used by the board of commissioners and the trustees, under the charter as it then existed, without any amendment thereto. The charter provisions as to the levy, collection, and use of the school tax in that school district, as stated by Justice Greenwood in case of the Beaumont charter, doubtless contemplated changes in the rate of the tax from year to year, and such provisions of its charter were intended to apply regardless of what that rate might be. If that be true, it was not necessary to amend the charter in order to change the rate, and an election whereby only the rate of tax was increased is not necessarily nor essentially a charter amendment within the meaning of article 11, § 5, of the Constitution, even though same be so submitted to the electorate and be voted upon as such. Our conclusion is, therefore, that said fifth proposition, though submitted as an amendment to Fort Worth's charter, was in fact and in effect not a "charter amendment" within the meaning of that term as used in the Home Rule Amendment to the Constitution, but only an election to increase the school tax rate, should have been governed by said article 2876, Vernon's Sayles' Civil Statutes as amended in 1917, and should have been confined to, and submitted to, the property tax payers of said district who were qualified voters, instead of to all qualified voters therein.

We do not think that the rule stated in the case of Garitty et al. v. Halbert et al. (Tex. Civ. App.) 235 S. W. 231, applies here. In that case the amendment to the charter was attacked as violative of section 10, art. 11, of the Constitution, and the statute we have discussed seems not to have been considered at all. We do not wish to be understood as either approving or disapproving the holding of the court in that case, but have rested our conclusion in the case before us on the grounds above discussed.

From the conclusions reached we are of the opinion that the trial court erred in sustaining the demurrers to plaintiffs' petition, and the case is therefore reversed and remanded for trial.

Reversed and remanded.

### On Motion for Leave to File Second Motion for Rehearing.

PER CURIAM. Appellees have filed a motion for permission to file a second motion for rehearing, earnestly insisting that our decision in this case is erroneous, and that the effect thereof will be to "practically disrupt the entire school system of the city of Fort Worth, as well as seriously affecting the rights of practically every other city in the state of Texas with a population in excess of 5,000 inhabitants." In this motion appellees are joined by the city attorneys of Houston, Dallas, Galveston, San Antonio, and Austin.

In the main the contention urged by appellees in the motion which they seek leave to file is contained in the following quotation:

"The controlling fact to which we respectfully and specifically desire to direct this honorable court's attention is that it was impossible for the City of Fort Worth to levy a tax for school purposes in excess of 71 cents except by having a higher maximum in its charter, and that higher maximum could only be created by an amendment to its existing charter. The Legislature could not amend that charter, as stated by Justice Greenwood in the Steinhagen Case. The Home Rule Amendment and Enabling Act transferred to the specified cities through the agency of their qualified voters the same power which the Legislature had theretofore possessed. That maximum could not be raised by an election submitted to the taxpaying voters or to any other class of voters under article 2876 or any other general law for the reason that the charter of the city of Fort Worth expressly provided in plain and mandatory language a different procedure for fixing such rate each year. Such an increased rate could not be established by the board of trustees or by the board of commissioners of the city of Fort Worth for the reason that the charter expressly provided that such rate should not be in excess of 71 cents on the $100 valuation, and consequently the only way in the world that it could be changed was by having that maximum changed, and that could only be done by an amendment to the existing charter."

It will thus be seen that a distinction is sought to be drawn between the case at bar and the Steinhagen Case, in that the charter of the city of Beaumont prescribed a method by which the tax might be raised without resort to the procedure of amending

the charter, whereas no such provision is contained in the Fort Worth charter; and that this difference in the charters of the two cities creates a different mode by which a tax rate or maximum rate may be increased.

The controlling questions thus presented are, we think: (1) Whether, in view of the Home Rule Amendment the Legislature had the power, by general law, to prescribe, as it has in R. S. art. 2876, the electorate by which a special school tax may be created or the rate thereof increased in cities constituting independent school districts; and, if so, (2) whether such legislation can be defeated by a charter provision prescribing the rate of such tax and providing no method for changing it other than by a charter amendment.

In the case of Garitty v. Halbert (Tex. Civ. App.) 235 S. W. 231, the Court of Civil Appeals for the Dallas district held that such charter may be amended so as to increase the maximum rate of school tax by majority vote of the qualified electors under section 5, art. 11, of the Constitution. As said in our original opinion, the court did not advert to Revised Statutes, art. 2876, but held that the Home Rule Amendment was not in conflict with section 10 of article 11 of the Constitution.

A writ of mandamus was applied for for the purpose of requiring certification of the question to the Supreme Court. Garitty v. Rainey, 112 Tex. 369, 247 S. W. 825. The application was denied on the ground that there was no conflict of decision presented, and that for that reason the Supreme Court was without jurisdiction to grant the relief sought. The question presented in the Garitty Case was thus tersely and clearly stated in the opinion of the Supreme Court:

"What the Court of Civil Appeals really held in this case was, that by virtue of section 5, art. 11, of the Constitution, and the Enabling Act thereunder, the inhabitants of the city of Corsicana had the right to amend their charter by a majority vote of the qualified electors, and in doing so levy a tax for school purposes, and that it was not necessary for a voter to be' a property tax paying voter in order to participate in such an election."

After holding that there was no conflict which would give the Supreme Court jurisdiction in the matter, the court further say:

"However, we desire to be understood in this matter. We are not deciding that the opinion of the Court of Civil Appeals here involved is correct or incorrect. That question is one we are not passing on, but reserve our decision fully and completely until it is presented in a cause over which we have jurisdiction. What we are deciding is that we have no jurisdiction to issue a mandamus in this case, because no such conflict is shown as warrants the granting of this extraordinary writ against a Court of Civil Appeals. The merits of the controversy as to the correctness of the opinion of the Court of Civil Appeals are not here involved."

Regardless of whether there be a conflict between our holding and that in the Garitty Case, it is clear to our mind that the latter case has been overruled by the Supreme Court in the Steinhagen Case. In order to hold that the Steinhagen Case does not apply to the case at bar, a controlling distinction must be drawn between the Beaumont and Fort Worth charters, as stated above. That the difference in the two charters makes no essential difference in the rules of law which control the decision in the two cases does not, we believe, admit of substantial doubt.

The Steinhagen Case clearly holds that the matter of a school tax rate is not germane to a city charter, and therefore is not subject to the mandatory provisions of the Home Rule Amendment with reference to the adoption and amendment of city charters. Nothing could be clearer than this holding. It was one of the determining elements upon which the decision in that case rested.

[3] Such being the case, it necessarily follows that the Legislature is not circumscribed in its powers to regulate by general law (as distinguished from a special law) in what manner and by what vote a city within the Home Rule Amendment may increase its school tax rate. This we think necessarily follows from the fact that the Legislature has general power to legislate upon the subject; and from the further fact that the Home Rule Amendment is clearly not self-executing, and the Legislature is invested with the express power by the Home Rule Amendment to legislate generally upon the subject.

[4] To hold that the Legislature has the power to prescribe the electorate by which a school tax may be voted or changed, and at the same time to hold that a city has the power to prescribe the rate by charter amendment, and that such charter amendment is governed by the provisions of the Home Rule Amendment relative to the qualifications of the electorate voting upon such amendment, is in effect destroying the power of the Legislature, by this indirect method, to legislate upon the subject. The Home Rule Amendment itself expressly inhibits any interference, directly or indirectly, with this legislative control in the proviso:

"That no charter or any ordinance passed under such charter shall contain any provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature of the state."

It has been the policy of the state to delegate to the taxpaying qualified voters of the locality affected the creation of local special taxes, and the fixing and changing of the rate thereof. Our Constitution contains many such provisions. There appears to be no constitutional inhibition, however, against

the creation or changing the rate of local school taxes in cities constituting independent school districts, other than by a vote of the taxpaying electors; but our statutes have for many years contained such provisions (R. S. arts. 2875–2883). Article 2876 was amended in 1917 and made expressly applicable to all cities whether incorporated under an act of Congress of the republic, or the Legislature, or any act of incorporation whatever. The purpose of this language clearly applied the article to cities incorporated under the Home Rule Amendment. That the Legislature had the power to pass this act and make it applicable to cities of over 5,000 inhabitants under the Home Rule Amendment necessarily follows, we think, from the holding in the Steinhagen Case; and it further follows we think from the validity of this statute that it is not within the power of a city to destroy the effect of the act in so far as it prescribes the electorate by embracing the tax rate or maximum tax rate within its charter.

The charter provision of the city of Fort Worth fixing the maximum school tax at 71 cents, which was sought by amendment to be raised to 86 cents, was contained in a special act of the Legislature passed before the Home Rule Amendment. This fact, however, in no way militates against the conclusion we have above expressed. Article 2876 would have been valid in the absence of the Home Rule Amendment, and was by the Legislature made to apply to a city incorporated under a special act the same as it was made to apply to any other incorporated city in the state. It is true that the Home Rule Amendment took from the Legislature the power to grant or amend city charters by special legislative act, and the repeal or withdrawal of this power by the Home Rule Amendment is manifestly what is referred to in the Steinhagen Case. But the power to legislate generally with reference to all cities under the Home Rule Amendment is expressly conferred upon the Legislature, and unquestionably article 2876 has application to every incorporated city in Texas whether created before the Home Rule Amendment by special legislative acts of incorporation, or created thereafter by whatever method. The article is made all-inclusive, and if valid must apply to Fort Worth, created by special charter, the same as to any other incorporated city; and if valid and applicable (as it is by its express terms) to the city of Fort Worth, then it is beyond the power of the city by resorting to the procedure of a charter amendment to raise the maximum school tax rate by a majority vote of the general qualified electorate, and thus to nullify the statutory provisions requiring such raise to be effected by a majority vote of the qualified taxpaying voters.

In conclusion we may add that we do not think the dire results forecast by appellees' counsel and their associates in the motion follow from our holding in this case. The holding in the Steinhagen Case that a special school tax rate is not germane to or an essential part of a charter under the Home Rule Amendment necessarily, we think, impels the further holding that it cannot be made a germane or essential part of the charter by placing it in the charter, and if not thereby made germane to or an essential charter provision, it is not necessary to change the charter in order to change the rate. The Legislature has prescribed by general statute the method by which the rate can be changed, and this general statute being valid, and the city being without the power to render it nugatory by putting the rate in its charter, it necessarily follows that the statute is in force regardless of whether the rate be placed in the charter by the city, or was in the charter prior to the Home Rule Amendment by virtue of a previous special legislative enactment.

In view of the importance of the contentions urged by counsel for the city, we have deemed it not amiss to restate and amplify our views upon them; although they had our careful consideration both when the case was first submitted and upon rehearing, and are, we think, disposed of in the original opinion.