## ZANE–CETTI et al. v. CITY OF FORT WORTH et al. (No. 12098.)

Court of Civil Appeals of Texas. Fort Worth. March 23, 1929.

Rehearing Denied in Part and Granted in Part April 27, 1929.

C. C. Gumm and A. J. Clendenen, both of Fort Worth, for appellants.

R. E. Rouer, Geo. C. Kemble, and R. M. Rowland, all of Fort Worth, for appellees.

BUCK, J. Plaintiffs, Carl Zane-Cetti, A. J. Long, James Harrison, W. H. Smith, Thomas B. Van Tuyl, C. A. Boaz, T. B. Petty, G. H. Colvin, J. E. Burton and George W. Birchfield, filed suit against the city of Fort Worth, its mayor and commissioners, and the city tax assessor and collector Albert Tankersley, to enjoin them from assessing and collecting for school purposes 36 cents on the $100 valuation of property in said city. Plaintiffs alleged that each of them was, on January 1, 1922, and ever since that date the owner of both real and personal property situated within the city of Fort Worth, and subject to taxation "for all the purposes which by law the property located in said city is so subject to taxes." The defendant, city of Fort Worth, is a municipal corporation, existing under a special charter granted to it by the Legislature of the state of Texas, in the year 1909, and defendant E. R. Cockrell is mayor of said city, duly elected, qualified, and acting as such, and defendants John Alderman, W. B. Townsend, Paul Gilvin, J. C. Lord, and R. A. Hunter, are each and all members of the board of commissioners, and that defendant Albert Tankersley is the assessor and collector of taxes of said city, and that each and all of said defendants held the positions above named at the several dates of the happening of the several matters hereinafter alleged.

The first amended original petition, in substitution of and in lieu of the original petition filed November 22, 1922, was filed June 25, 1923, and alleged:

That on, to wit, July 11, 1922, the said city of Fort Worth being a city of more than 5,000 inhabitants, and the defendants being desirous of having the charter of said city amended in several respects, in pursuance of section 5, art. 11, of the Constitution of the state of Texas, and in accordance with an amendment to the Constitution adopted at an election held on November 5, 1912, the said mayor and city commissioners did on said July 11th, at a regular meeting thereof, make and publish the following proclamation and notice of an election to be held in the city of Fort Worth, to wit:

"The qualified voters of the City of Fort Worth are hereby notified that on July 22, 1922, between the hours of 8 o'clock a. m. and 7 o'clock p. m., there will be held in said City of Fort Worth an election, at which 5 proposed amendments to the existing charter of said City will be voted upon by the qualified voters of said City. Copies of said proposed amendments have been substantially set out in notices and ordinance duly published in the official newspaper of said City of Fort Worth, in connection with the ordering of such election; also copies of said proposed amendments have been, or will be mailed in accordance with law by the city secretary's office to all qualified voters of said City according to the official poll tax list."

That one of the propositions to be voted on at said election was as follows:

"Shall sections 14 and 15 of Chapter XV of the existing charter of the City of Fort Worth be amended so as to hereafter read as follows:

"Section 14. School Taxes, Rate of; Levy and Collection; Expenditure by Trustees. The Board of Commissioners of the City of Fort Worth shall have no discretion in fixing the rate at which taxes shall be assessed and levied each year for the benefit of public free schools, provided such rate does not exceed 86 cents on each $100.00 of value of the property subject to taxation, but shall assess and levy the rate fixed annually by the Board of Trustees of the Independent School District of the City of Fort Worth up to and including the rate of 86 cents on each $100.00 of the value of the property, subject to taxation as aforesaid, and it shall become the duty of the Board of Commissioners, to annually levy and collect said taxes as other taxes are levied and collected, and said tax when collected shall be placed at the disposal of said Board of Trustees by paying over monthly to the Treasurer of said Board of Trustees the amount collected for the support of the public free schools of Fort Worth, to be used for the maintenance, support and use thereof. Said authorized rate of 86 cents on the $100.00 shall be in addition to and independent of all other taxes provided for in this charter.

"Section 15: School Taxes; School Board to Determine Rate. It shall be the duty of the Board of Trustees of the Independent School District of the City of Fort Worth to determine what amount of taxes, not exceeding 86 cents on each $100.00 of the value of the property subject to taxation, shall be necessary for the support, maintenance and use of the public free schools of the city of Fort Worth for each current year, and the repair, erection and purchase of buildings, and on or before the date upon which the Board of Commissioners is required by this charter to levy general taxes, said Board of Trustees shall certify to the said Board of Commissioners the rate of taxes to be levied for the school purposes, and it shall be the duty of said Board of Commissioners to levy said taxes."

That an election was held on July 22, 1922, at which said election all persons whose names were shown on the official poll tax list for the city of Fort Worth were invited to vote, and at which said election all persons who had paid their poll taxes for the year 1921, and all persons who were by law exempt from the payment of poll tax, were permitted to vote, and no other or further qualification was required of the voters by the officers of the election at said election.

That on July 25, 1922, the defendants, the city commissioners of the city of Fort Worth, met in regular session, and canvassed the votes cast, and found that the charter amendment increasing the tax to be levied for school purpose had passed and had been duly and legally adopted. That on August 31, 1922, the defendants, the city commissioners of the city of Fort Worth, in pursuance of the authority vested in them by law to levy taxes for all taxable purposes for said city, made and entered an order levying taxes, and levied and assessed 86 cents on every $100 property valuation for school purposes, 76.72 cents apportioned for the maintenance of schools, and 9.28 apportioned for the use and benefit of the several series of the city of Fort Worth school bonds.

Plaintiffs alleged that said election and result thereof was and is illegal and void, because others than property taxpayers who were qualified voters and residents in said city of Fort Worth were invited and permitted to vote at said election, in violation of article 2876 of the Revised Statutes of the state of Texas [Rev. St. 1911, as amended by Acts 35th Leg. 1917, c. 169, § 1].

This petition was duly verified. Upon presentation of the petition, the trial court held that it was subject to general demurrer. Upon appeal, the Court of Civil Appeals, at Austin, held that the trial court incorrectly sustained the demurrer to plaintiffs' petition and reversed and remanded the cause for new trial, 269 S. W. 130. The defendants made application for writ of error, which was granted, and the Commission of Appeals, approved by the Supreme Court, affirmed the holding of the Court of Civil Appeals in City of Fort Worth v. Zane-Cetti et al., 278 S. W. 183. It was agreed that the suit was tried in the district court on January 25, 1923; the cause was appealed to the Court of Civil Appeals, and on December 17, 1924, the judgment of the trial court was reversed and the cause remanded. Motion for rehearing was denied on January 28, 1925; and a second motion for rehearing was overruled on February 20, 1925. Defendants applied to the Supreme Court for a writ of error, which was granted, and the judgment of the Court of Civil Appeals affirmed December 10, 1925; a motion for rehearing was overruled by the Supreme Court on April 20, 1926. The mandate from the Supreme Court in this cause was received and filed by the clerk of the trial court on May 22, 1926.

On March 23, 1928, within two years from the final adjudication of the question as to whether the plaintiffs stated a cause of action in their suit to enjoin the assessing and levying of increased city taxes for school purposes, the plaintiffs filed their second amended original petition, in which they alleged that they had been required by the city assessor and collector to pay the increased tax for school purposes for the years 1922, 1923, and 1924.

Plaintiffs alleged that they and each of them offered and tendered to the assessor and collector of taxes payment of all taxes due by them to the city of Fort Worth for all purposes less the claimed illegal and void taxes for school purposes, but said assessor and collector refused to permit plaintiffs, or any of them, to pay their taxes so due the city without including therein the said illegal and void taxes; that during the pendency of the appeal from the judgment of the trial court they were required to pay said illegal and void taxes, in order to prevent a cloud to be cast upon the title of their real estate, and in order to avoid a penalty of one per cent. a month for their entire amount of taxes.

In the amended petition, ten or eleven others joined as plaintiffs, to wit, Mrs. M. B. Boaz, The Southern Land Company, a corporation, E. O. Boaz, Wallace P. Boaz, Mrs. C. C. Gumm, Mrs. L. B. Comer, Sam D. Boaz, Boaz & Field, O. E. Boaz, C. A. Boaz, trustee, Boaz, Boaz and Boaz, Mrs. Bena Boaz. Plaintiffs sought to recover the taxes alleged to be illegally levied and collected during the three years 1922, 1923, and 1924.

The defendants answered and the issues were joined. Among other defenses the defendants pleaded the statute of two years' limitation.

On April 27, 1928, the cause came on regularly for trial, and the defendants presented to the court their general demurrers and special exceptions to the plaintiffs' pleadings, which were by the court overruled. The cause then came on for trial on its merits, and, no jury being demanded, the matters of fact as well as of law were submitted to the court, the cause being tried upon an agreed statement of facts prepared and signed by the attorneys of record for all the parties in the trial court. The court found that all of the tax payments for which recovery was sought in this suit were made more than two years before the filing of any suit to recover them back, with the single exception of the tax payment of J. E. Burton, on May 4, 1926. The court further found that the only parties plaintiff to this suit, as originally filed on November 22, 1922, were the ten parties named as plaintiffs in the original petition, and that all other parties now appearing as plaintiffs were in contemplation of law strangers to said court, and were not before the court in any way whatever until they made themselves parties by joining with the original plaintiffs, on March 23, 1928, and that said last named parties were not identified with any suit in any way until the date last named, and are not in a position to claim any benefit from the pendency of the original suit prior to the time they became parties to the suit. Thereupon the court gave judgment for the defendants as to all parties

except J. E. Burton, and as to him judgment was awarded for $188.19, with interest and costs. Notice of appeal was given by the plaintiffs, and J. E. Burton excepted to that part of the decree which denied him any recovery on account of tax payments made by him in the years of 1922 and 1923. Defendant did not give any notice of appeal, as shown by the transcript.

### Opinion.

In order that the questions involved may be disposed of in their due course, the following questions will be considered:

(1) Did the filing of the injunction suit, on November 22, 1922, stay the running of limitation until the Supreme Court had decided finally whether or not the tax was legal? (a) As to the first ten plaintiffs? (b) As to the remaining plaintiffs?

(2) Did the filing of such injunction proceeding stay the running of limitation (a) as to the additional 36 cents on the $100 valuation, or (b) as to the 15 cents on the $100 valuation?

(3) Was the Fort Worth independent school district a necessary party?

(4) Was there a misjoinder of parties plaintiff?

■ As preliminary to the discussion of these questions, we think that undoubtedly the two years' statute of limitation (Rev. St. 1925, art. 5526, subd. 4) would apply to an action for the recovery of taxes levied, demanded, and collected by municipal authorities, or by the state. O'Connor v. Koch, 9 Tex. Civ. App. 586, 29 S. W. 400, writ of error refused; Mellinger v. City of Houston, 68 Tex. 37–42, 3 S. W. 249.

■■ An appeal suspends limitation until the case is finally decided by an appellate court, where an appeal is taken. 17 R. C. L. § 232, p. 876; McGovern v. Rectanus (Ky.) 105 S. W. 965, 14 L. R. A. (N. S.) 380, 4 Ann. Cas. 150; Fields v. Austin (Tex. Civ. App.) 30 S. W. 386; Texas Trunk Ry. Co. v. Jackson, 85 Tex. 605, 22 S. W. 1030; City of Fort Worth v. Zane Cetti, 278 S. W. 183, by the Commission of Appeals; Pease v. State ex rel. Sutherland (Tex Civ. App.) 228 S. W. 269, writ refused. The question involved in the injunction suit was the right of the city to levy and collect the taxes alleged to have been voted by an illegal vote. If the property holding taxpayers only were allowed to vote at the election on July 22, 1922, then the tax levy was properly made; if not, the taxes were improperly levied and collected. Hence we are of the opinion that the injunction suit challenged the right of the city of Fort Worth, for the benefit of school purposes, to levy and collect this increased tax. Therefore, we are of the opinion that the statute of limitation was stayed during the pendency of this suit, and until the question had been finally settled by the decision of our highest state tribunal.

■ From what we have said heretofore, it follows that the original plaintiffs were not barred to recover taxes paid under protest during the pendency of the injunction suit, at least as to the extra 15 cents on the $100 valuation. In the injunction suit, plaintiffs did not sue for themselves and for the others similarly situated. If they had done so, and inasmuch as the evidence shows that all of the subsequent parties seeking to be made parties joined with the original parties in paying the attorneys' fees and costs of suit, probably the subsequent plaintiffs, likewise, would have been entitled to the stay of limitation. But, in the absence of a plea for the benefit of the plaintiffs in the original suit and others similarly situated, we think the subsequent plaintiffs were, as held by the trial court, strangers to the suit, and were barred.

But were the plaintiffs at the time of filing the suit to recover the taxes illegally collected barred to recover the 36 cents on the $100 valuation, or only as to the 15 cents on the $100 valuation? Evidently from the pleadings of plaintiffs and defendants and the judgment of the court there was involved the question as to whether the 36 cents on the $100 valuation was illegally collected, though it appears that on June 17, 1919, sections 14 and 15, chapter XV, of the Charter and Revised Ordinances of the City of Fort Worth, were amended "by a vote of the people of Fort Worth" so as to provide for a maximum tax rate for school purposes of 71 cents on the $100 valuation. It is not stated in the statement of facts whether the vote by "The people of Fort Worth" was limited to the property holding taxpayers, or as in the election of July 22, 1922, was by all those who had paid their poll tax, or were exempt from payment of poll tax. If the election of June 17, 1919, at which the rate of taxes for school purposes was raised from 50 cents to 71 cents, was a legal election, that is, only property holding taxpayers were allowed to vote, then only 15 cents on the $100 valuation was involved in the injunction suit filed in the trial court. But, if the election of July 17, 1919, improperly allowed all those qualified to vote in general elections to vote for the increased rate of taxes, then we see no reason why the legality of the election of June 17, 1919, could not have been questioned in this injunctive proceeding. Evidently the Commission of Appeals in the City of Fort Worth v. Zane-Cetti, 278 S. W. 183, considered that the increase in the rate of taxes for school purposes above 50 cents on the $100 valuation was involved, and that said Commission of Appeals in its opinion decided that 36 cents on the $100 valuation, and not 15 cents, was improperly levied. See City of Fort Worth v. Zane-Cetti, supra; Zane-Cetti v. City of Fort Worth, 269 S. W. 130, by the Austin Court of Civil Appeals. Whether 36 cents on the $100 valuation is involved, or only 15 cents on the

$100 valuation, can be determined by the trial court on another trial.

◼ Was the Fort Worth independent school district a necessary party to this suit? An exception was leveled at the pleadings of plaintiffs below, on the ground that the school district was a necessary party. In Brown v. First National Bank of Corsicana, 175. S. W. 1122, 1124, by the Dallas Court of Civil Appeals, writ of error refused, it was held that, in a suit to enjoin collection of taxes, it was not necessary to join the state of Texas and the county of Navarro, because action against only those seeking to collect the taxes was essential. The court said in part:

"The first assignment of error complains of the overruling of appellants' general demurrer to appellees' petition. It is contended that this action of the court was error: (1) Because it appears from the petition that the county of Navarro owns the larger portion of the taxes involved, from the collection of which appellants are perpetually enjoined, and said county is not made a party to the suit; (2) because it appears from said petition that a large portion of said taxes belongs to the state of Texas, and said state is not made a party to the suit. Appellees, in reply to this assignment, assert that the nonjoinder of Navarro county and the state of Texas as defendants herein could not be raised by a general demurrer. This assertion is correct, except, probably, in cases where the want of proper or necessary parties is apparent on the face of the petition, and if the State of Texas and county of Navarro were necessary parties to this suit, for the reason that a part of the taxes sought to be enjoined belonged to each, then the fact was apparent from the allegations of the petition and the law applicable thereto, and the nonjoinder could, it would seem, be taken advantage of by general demurrer. Williams v. Bradbury, 9 Tex. 487; Shelby v. Burtis, 18 Tex. 645; Railroad Co. v. Le Gierse, 51 Tex. 189. However, this may be, we think that neither the county of Navarro nor the state of Texas was a necessary party to this action."

In Stimson Timber Co. v. Mason County, 97 Wash. 205, 166 P. 251, 252, by the Supreme Court of Washington, an action was brought to recover a tax alleged to be void and paid under protest. It was alleged that the tax for the year 1915, assessed against the plaintiff's property, included a special four-mill tax, levied for school district No. 45 of Mason county, for the purpose of constructing a schoolhouse; that, when the taxes became due, the plaintiff offered to pay all the taxes, except the four-mill levy, which offer was refused, and thereupon the plaintiff paid the whole tax, and protested against the payment of the four-mill tax levied for the purpose above stated. It was necessary to pay the taxes, in order that the plaintiff might utilize its property. Plaintiff alleged that the four-mill tax levied for the school district was void, because the board of directors of the school district were not authorized to build the schoolhouse for which the tax was levied. The court said:

"It is argued by the appellant that there is a defect of parties defendant; that the school district was a necessary party defendant. There is much force in the reasoning of the appellant upon this question; but this court has held that, where the trustee is defendant, he alone may be sued without joining the cestui que trustent with him. Thompson v. Price, 37 Wash. 394, 79 P. 951; Burdick v. Kimball, 53 Wash. 198, 101 P. 845. The county collected the tax for the school district, and it was not necessary to make the school district a party, in order to recover the illegal tax."

This question is raised in one of appellee's cross-assignments. We do not believe that the school district was a necessary party, but do believe that it was a proper party, and, upon another trial, if the defendants urge that it is a proper party and should be made a party defendant, we see no reason why this should not be done. While the Fort Worth independent school district has no part in the levy of the taxes nor perhaps in the collection thereof, yet said district is really the party at interest, and the taxes when levied and collected are turned over to the school district, and said district has the entire control of the expenditure thereof. See 20 R. C. L., under the heading "Parties," p. 664 et seq.

In passing, it may be well to say that we have examined the case of City of Dallas v. Kruegel, 95 Tex. 43, 64 S. W. 922, 923, urged by appellees as authority for the contention that the action for the recovery of taxes in the instant case was barred at the time of the institution of the suit therefor on, to wit, March 23, 1928. In the cited case, Kruegel sold a tract of land to the city of Dallas. There was a controversy between the city of Dallas and Kruegel as to whether Kruegel was due the city a certain amount for taxes, a part of which taxes were for street improvements. Kruegel had obtained an injunction restraining the city from selling his property, claiming that the taxes were illegal. Deeds were exchanged; the city paying Kruegel for his property another piece of property and $8,000 in cash. In order to satisfy the city as to the title to his property, and that said title was free from incumbrance, Kruegel paid the taxes, as he stated, under protest. Thereafter the injunction suit was tried, and by a judgment of the district court Kruegel was required to pay said taxes. This judgment was subsequently reversed by the Court of Civil Appeals, and the sale of the property for the amount of taxes claimed against it was enjoined. "All of this took place more than four years," quoting from the Supreme

Court opinion, before the action for the recovery of the taxes was begun. The Supreme Court held that the action for the recovery of taxes was barred. The court said:

"We shall not enter upon the question whether or not plaintiff had a cause of action to recover the money which he left in the hands of the city, after the settlement. If he had such cause of action, we think it quite clear that it accrued at once, and hence was barred when he brought his suit. All of the facts out of which it grew had then transpired, and, in order to postpone its assertion, the transaction must admit of the construction that the city agreed, expressly or by implication, to hold the money subject to the result of the injunction suit. Nothing of the kind is shown, but the evidence makes it plain that it did not exist. The plaintiff does not testify that there was such an understanding, and the officers of the city state that their demand for the payment of the assessments out of the purchase money was absolute and unconditional. This the evidence of plaintiff admits. The only additional circumstance is the inquiry of plaintiff whether or not he could pay under protest, and the reply that could do so. This only affected the question as to whether or not the payment was voluntary, and it had no effect towards postponement of the right to sue. Certainly, if plaintiff had sued at once, the city could not have defeated him, with these facts, under a plea that his cause of action had not accrued, or was postponed until the injunction suit was terminated.

"The subsequent prosecution of that suit was the act of plaintiff and his coplaintiffs therein. It did not alter the facts characterizing the sale of the property and the settlement therefor. The plaintiff could have tried the validity of the assessments as well in a suit to recover the money as in the injunction case, with the difference that in the one case he would have sought to recover the money paid in such a way as to interrupt limitations, while in the other he was seeking no such relief."

It is evident in the cited case that Kruegel paid the amount of taxes in order to consummate the land trade between him and the city. Such payment under these circumstances was not forced or made under duress. He could have immediately sued for the recovery of the taxes, and, if he had done so, doubtless could have recovered them.

■ It appears that some of the claims for refund of the original plaintiffs were less than the jurisdictional amount of the district court. Should the trial court have sustained the plea to the jurisdiction as to such claims? If all the claims of plaintiffs below were within the jurisdiction of the trial court, then we think undoubtedly the plea of misjoinder of causes of action and of parties would not be good. In order to avoid a multiplicity of suits, in a cause or causes of action of the same character, and against the same defendant or defendants, or where the defendant has the same defense, if any, then plaintiffs may join their causes of action in one suit. The rule against multiplicity of suits has particular force in our system of procedure. Within reasonable limits it is the cardinal principle as to the joinder of parties and causes of action. Degress v. Hubbard, 2 Posey, Unrep. Cas. 735, 736; Rush v. Bishop, 60 Tex. 177. The rule against multifariousness or forbidding the misjoinder of causes of action is a rule of convenience and expediency, and should be construed with reference to the broader policy which enjoins the avoidance of a multiplicity of suits. St. Louis, etc., Ry. Co. v. Hengst, 36 Tex. Civ. App. 217, 81 S. W. 832, Id., 98 Tex. 630, 82 S. W. XV, writ denied.

■ The leading principle in our law and system of procedure is to avoid a multiplicity of suits, and to settle in one action the respective claims of parties when they are of such nature as to admit of adjustment in that mode. Fitzhugh v. Orton, 12 Tex. 4; Thomas v. Hill, 3 Tex. 270. In permitting a joinder of parties plaintiff, the courts have exercised a sound discretion in determining whether the subject-matters of the suit are properly joined and whether parties plaintiffs and defendants are properly joined. Craddock v. Goodwin, 54 Tex. 578. When two causes of action are connected with each other or grow out of the same transaction, they may be properly joined, and in such suits all parties against whom the plaintiff asserts a common or an alternative liability may be joined as defendants. Clegg v. Varnell, 18 Tex. 294; Jones v. Ford, 60 Tex. 129. Nor is there necessarily a misjoinder of parties or of actions because different judgments are prayed for against the several defendants. McCormick v. Blum, 4 Tex. Civ. App. 9, 22 S. W. 1054, 1120, Id., 93 Tex. 645, 29 S. W. XIX, writ of error denied. A court having acquired jurisdiction for one purpose has the right to have all questions properly involved litigated in that suit. The district court, having acquired jurisdiction of the suit for injunction, had the right to try other matters involved in that suit, or that might become involved by reason of amendments to the petition. Automobile Finance Co. v. Bryan (Tex. Civ. App.) 3 S.W.(2d) 835; City of Corsicana v. King (Tex. Civ. App.) 3 S.W.(2d) 859; Chambers & Thigpen v. Cannon, 62 Tex. 293; Willis v. Gordon, 22 Tex. 243; Witt v. Kaufman, 25 Tex. Supp. 384.

■ The trial court having obtained jurisdiction by reason of the suit and petition for injunction, and said cause of action therein asserted having been decided by the Court of Civil Appeals and by the Supreme Court, then the trial court, upon a remanding of the cause, had jurisdiction over the parties and the subject-matter. 4 R. C. L. p. 519, § 31.

We are of the opinion that the plea to the jurisdiction was properly overruled.

The judgment in favor of defendants and against the plaintiffs sought to be made parties by the amended petition of March 23, 1928, is affirmed. The judgment against the defendant and in favor of J. E. Burton, for the taxes illegally collected for the year 1924 is in all things affirmed. The judgment, both as to him otherwise and as to the other original plaintiffs, is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Judgment affirmed in part and reversed and remanded in part.

### On Appellant's Motion for Rehearing.

Appellants urge that in our original opinion we were in error in not reversing and rendering for the plaintiffs in the original petition the amount of the taxes for the three years, 1922, 1923, and 1924. The reason we did not do this was because we were of the opinion that there was a question of fact to be determined by the trial court as to whether an election held on June 17, 1919, by which sections 14 and 15 of the charter were amended, was by vote of the property holding taxpayers, or merely by a vote of all who had a poll tax. Our attention is called to a statement in the agreed statement of facts which we overlooked in our original opinion. Such statement is as follows:

"The above quoted charter provisions remained in force until the creation of the new Fort Worth Independent School District by a special act of the legislature, approved and effective March 16, 1925, except that on June 17, 1919, sections 14 and 15 above set out were amended by a vote of the people of Fort Worth so as to provide for a maximum tax rate for school purposes of 71 cents on the $100.00. The other charter provisions above set out were not changed, and the only changes made in sections 14 and 15 were the ones above stated. The amendment, or attempted amendment, made on June 17, 1919, was adopted at a charter election in which the proposed amendment was submitted to the qualified voters of Fort Worth generally without confining the vote to property tax paying voters. In other words, said amendment was passed and adopted in the same way and manner as the charter amendment of July 22, 1922."

It will be noted that it is agreed that the amendment or attempted amendment made on June 17, 1919, was adopted at a charter election in which the proposed amendment was submitted to the qualified voters of Fort Worth generally without confining the vote to the property holding taxpaying voters. Hence it appears that the increase of the taxation from 50 cents to 71 cents on the $100 valuation was voted at an election at which the voters participating were not limited to the property holding taxpayers. Therefore we conclude, under our view of the case, that 36 cents on the $100 valuation was involved in this suit, and that all questions concerning the right of the original plaintiffs to recover the taxes sued for have been settled.

The judgment heretofore rendered by this court will therefore be reformed and amended so as to entitle nine of the original plaintiffs, all except J. E. Burton, to a recovery of the taxes sued for, with interest thereon as to each payment of the taxes for the three years involved, interest at 6 per cent. to be recovered from date of payment of each year's taxes. Judgment will also be rendered for J. E. Burton for a recovery of taxes paid for the year 1922, and for the year 1923, with interest from dates of payment, in addition to the recovery allowed him by the trial court for the taxes for the year 1924. But otherwise the judgment rendered on original hearing is undisturbed.

Appellants also urge that we were in error in affirming the judgment of the trial court as to the subsequently made plaintiffs, by the amended original petition, filed March 23, 1928. But we do not agree with this contention.

Appellees have also filed a motion for rehearing and to certify. The motion for rehearing urges the same points that have been decided by this court, and we do not feel that the judgment heretofore rendered, as to the questions raised in the motion for rehearing, should be disturbed.

As to the prayer for certification to the Supreme Court, we think that the same should be overruled. Some of the questions suggested for certification in our opinion have been decided by the Commission of Appeals, and approved by the Supreme Court, in City of Fort Worth v. Zane-Cetti, 278 S. W. 183. Such questions as are not controlled by this last-cited decision we do not think require certification.

The motion of appellees for rehearing and to certify is overruled, and the motion for appellants is granted in part and overruled in part.