City of Ft. Worth v. C. M. Cureton, Attorney-General.

No. 3351.    Decided June 2, 1920.

(222 S. W., 531.)

**1.—Cities—Bonds—Taxation—Charter of Ft. Worth.**

The charter of the City of Ft. Worth authorized levy of $1.75 on the $100 as taxes for general purposes "inclusive of the school tax that may be levied by the Board of Trustees, "and the Trustees were authorized to require a tax not exceeding 50 cents per $100, for school purposes. An amendment to the charter authorized an additional levy of 23 cents on $100, for school purposes, upon approval at an election by the qualified voters of the city, which approval was had. Held, that the city's taxing power for general purposes ($1.75) was reduced to $1.25 by the 50 cent tax levied by the school board, but was not further reduced by the special school tax levied under the amendment by vote. The power to levy taxes at $1.25 for general purposes was intended as a permanent power for that purpose, and remained unaffected by the levy of the special school tax. (Pp. 593-596).

**2.—Cities—Bond. Issue—Qualified Voters.**

A city charter governing elections authorizing the issue of bonds per-mitted only qualified voters paying taxes on property in the city to vote thereat. In an election authorizing the issuance of bonds and the levy of a tax to meet them, requiring the approval of the "qualified voters" of the city, only tax-payers were such qualified voters under the charter and participation in the election was properly limited to them. (P. 596).

Original application to the Supreme Court for writ of mandamus to require the Attorney General to approve an issue of bonds by the City of Ft. Worth.

*T. J. Powall, D. W. Odell,* and *R. M. Rowland,* for relator.—The last five words of the first sentence in section 16, chapter 8, are in our opinion entitled to much weight and significance in this discussion. They are: "as provided in this Act." It is only the school

tax provided for in the Act of the Legislature of March 10, 1909, that is included in the aforesaid maximum of $1.75. It certainly takes a mighty stretch of construction to make a thing done by the voters of Fort Worth in 1919 part and parcel of a thing done by the Legislature of Texas in 1909. But if the door to construction is opened, then what? In that event we start with the following well established canons of construction.

Organic laws adopted by popular vote, whether constitutions or municipal charters, are to be given such meaning as the average voter participating in the election would propably give them. Brady v. Brooks, 99 Texas, 366; Cox v Robinson, 105 Texas, 426; San Antonio Independent School District v. State, 173 S. W., 525.

The intention of the law makers (in this instance the voters of Fort Worth) may be ascertained by considering the facts and circumstances under which the law in question was adopted. Railroad Commission v. H. & T. C. Ry. Co., 90 Texas, 340.

In construing a law, whether organic or statutory, the courts are to look to the evil intended to be remedied. San Antonio Independent School District v. State, 173 S. W., 525.

The courts will "try out the right intendment of the law" and follow the intent although it may be in conflict with the language used to express it. Russell v. Farquhar, 55 Texas, 355; Storrie v. Houston City St. Ry. Co., 92 Texas, 129; Stone v. Hill, 72 Texas, 540; Queen Insurance Co. v. State, 86 Texas, 268; 1 McQuillin on Municipal Corp., sec. 344.

Legislation, organic or statutory, must be reasonably construed and in a manner not repugnant to common sense. Queen Ins. Co. v. State, 86 Texas, 250; St. L. S. W. Ry. Co. of Texas v. Tod, 94 Texas, 632.

In the interpretation of laws the injustice, inconvenience or absurdity that will result from a proposed construction will be considered. Engelking v. Von Wamel, 26 Texas, 469; Stone v. Hill, 72 Texas, 540.

If possible that construction will be adopted which will promote the public interests and accord with sound economic policy: State v. DeGress, 72 Texas, 242; City of Austin v. Cahill, 99 Texas, 172; Miller v. Tod, 95 Texas, 404.

The contemporaneous practical construction placed upon a law by those charged with its administration and those affected by its operation is to be considered: State v. McAllister, 31 S. W., 187; McQuistion v. Fenet, 144 S. W., 1155.

There are two referendum provisions in the City charter in which the words qualified voters are used, one being a general referendum clause, chapter 12, section 5, in which all the voters in the city may participate in an election, the other is the referendum provision of the charter concerning bond issues, article 8, section 18, which

provides that only the qualified voters who pay taxes on property can vote.

In construing section 16, chapter 8, the court will take into consideration all of the referendum provisions of the charter and give full force and effect to all of the provisions when required, and sustain the validity of the bonds; and irregularities in the exercise of the power cannot be urged against the bonds. Werner v. Galveston, 77 Texas, 22; Shaw v. Lindsley, 195 S. W., 338; Fort Worth v. Davis, 57 Texas, 225; Brennan v. Water Co., 67 S. W., 143. See also City of El Paso v. Conklin, 44 S. W., 879.

*C. M. Cureton*, Attorney-General, and *W. P. Dumas*, Assistant, for respondent.—The taxing powers of a city incorporated under a special charter cannot exceed the maximum rate prescribed in such charter. Constitution of Texas, art. 11, sec. 5; General Laws 33rd Legislature, Regular Session, chap. 147; 1 Dillon on "Municipal Corporations" (5th ed.), sec. 212.

A municipal corporation has no power of taxation, except such as is expressly conferred upon it by law; and this power must be strictly construed. Constitution of Texas, art. 11, sec. 5; City of Forth Worth v. Davis, 57 Texas, 225; Frosch v. City of Galveston, 73 Texas, 401; Wood v. City of Galveston, 76 Texas, 126; Carlisle v. Eldridge, 1 W. & W. Civil Cases, paragraph 989.

The charter of a municipal corporation is its organic law and gives to it all the powers it possesses consistent with the State Constitution and general statutes applicable thereto. Constitution of Texas, art. 11, sec. 5; General Laws 33rd Legislature, Regular Session, chap. 147; 1 Dillon on "Municipal Corporations" (5th ed.), sec. 59; Cohen v. City of Houston, 176 S. W., 809; Xydias Amusement Co. v. City of Houston, 185 S. W. 415.

A constitution derives its powers from the people who ratified it, and the intent to be arrived at is that of the people and this intent is to be found in the instrument itself. Beardstown v. Virginia, 76 Ill., 34, 35; Cumberland Tel. & Tel. Co. v. City of Hickman, 111 S. W., 311; Western Union Tel. Co. v. Railroad Commission of La., 45 So., 598; Cox v. Robison, 105 Texas, 426; Schubel v. Olcott, 120 Pac., 375; Prescott v. Duncan (Tenn.), 148 S. W., 229; State v. N. Y. Life Insurance Co. (Ark.), 171 S. W., 879; Northern Pacific Ry. Co. v. Mjelde (Mont.), 137 Pac. 386; Booth and Flinn v. Miller (Pa.), 85 Atl., 457.

Effect must be given to every part and every word in a law and the courts avoid a construction which renders any provision thereof meaningless or inoperative. Tuttle v. National Bank of the Republic, 161 Ill., 497; Thompson v. Grand Gulf R. & B. Co. (Miss.), 34 Am. Dec., 81; Crawford v. Gilchrist (Fla.), 59 So., 963; Lastro v. State, 3 Texas App., 363; Cordova v. State, 6 Texas App., 207.

Where a section of a law is amended the original section ceases to exist, and the section as amended supersedes it and becomes a part

of the law for all intents and purposes as if the statute had been originally enacted in the amended form. Walsh v. State (Ind.), 41 N. E., 65, 33 L. R. A., 392; Stonega Coke, etc., Co. v. So. Steel Co. (Tenn.), 131 S. W., 988, 31 L. R. A. (N. S.), 278; State v. Adams Express Co., 85 N. E., 337, 19 L. R. A. (N. S.), 93; State v. Massey, 103 N. C., 356, 4 L. R. A., 308; Utah University v. Richards, 20 Utah, 457; Farrell v. State, 54 N. J. Law, 421; Blair v. Chicago, 201 U. S., 400; Sutherland on Statutory Construction, sec. 133.

The 4-cent tax to provide for the payment of the proposed $400,000 waterworks bonds was not legally authorized. At the election at which the issuance of the proposed bonds was authorized, attempt was made to submit the question of the levy of the 4-cent tax, but as shown by the resolution ordering the election "only the qualified voters who pay taxes on property in said city" were allowed to vote, whereas the city charter specifically declares that "no such special tax may be levied . . . except upon the approval of the qualified voters of Fort Worth at an election duly ordered according to the referendum provisions of this charter." (Fort Worth Charter, sec. 16, chap. 8.) Chapter 12 of the charter contains the "referendum provisions."

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The Attorney-General having refused to approve a bond issue of the City of Fort Worth in the amount of $1,890,000,—$400,000 of the bonds being for water works purposes, the City prays for a mandamus to compel his approval of the issue.

The bonds and the tax necessary to provide for their payment, principal and interest, were duly voted at an election held April 8, 1919, for the purpose. The objections to them made by the Attorney General are based upon his construction of certain provisions · in the City's charter. If that construction is erroneous, it is conceded that the bonds should have his approval.

The charter of the City granted by the Legislature in 1909 gave it the power to levy for general purposes a tax not exceeding $1.75 on the $100 valuation, "inclusive of the school tax that may be levied by the board of trustees of public schools, as provided in this Act."

By the other provisions of the charter, the board of trustees of the Fort Worth Independent School District, created by the same Act, was authorized to require of the City a tax levy for school purposes of not exceeding 50 cents on the $100 valuation.

Accordingly, the City's maximum tax rate for all general purposes under the original charter, was $1.25 on the $100 valuation.

The charter also authorized a special tax for water works purposes of 25 cents on the $100 valuation, not to be levied, however, except

upon the approval of "the qualified voters" of the City at an election ordered according to the referendum provisions of the charter. Under those provisions governing bond elections, only qualified property tax paying voters are entitled to vote; and in the election held with respect to these bonds, only such voters were allowed to vote.

The charter was amended, June 17, 1919, at an election held under Amended Section 5 of Article 11 of the Constitution, so as to authorize for general school purposes and, for medical inspection in the schools an additional tax of 21 cents and 2 cents on the $100 valuation, respectively. The effect of these two amendments was to enlarge the City's taxing power for all school purposes to the extent of 23 cents, affording it a maximum rate for such purposes of 73 cents on the $100 valuation.

The principal question in the case is whether the grant by these amendments of the additional taxing power for school purposes of 23 cents on the $100 valuation, has reduced in the same proportion the City's general taxing power of $1.25 on the $100 valuation as originally conferred by the charter. As to the 2 cent tax for medical inspection in the schools, the Attorney-General does not contend that the City's general taxing power has been impaired, but we will treat the question as affected by the authorization under the amendments of both the additional 21 cents general school tax and the 2 cent tax.

If nothwithstanding these amendments the City still has a general taxing power of $1.25 on the $100 valuation, the tax voted as provision for the payment of the $1,490,000 of the bonds is a valid tax, since, with other taxes required and currently levied for other general charges and indebtedness of the City as shown by the record, it does not exceed that amount.

The proposition advanced by the Attorney-General is, that the grant by the charter of a taxing power for general purposes of $1.75 on the $100 valuation was to be inclusive of any tax for general school purposes which might be thereafter authorized.

This in our opinion is not the true construction of the charter provision. It is contrary to its manifest intention, and opposed to its literal language, as well. The charter, as all other laws, looked to the future. Its object was to make definite provision for the general taxation needs of the City, and like provision for the City's schools and water works. Otherwise, it would have failed as a charter and been undeserving of the name, in furnishing no dependable measure of vital powers necessary for the City's subsistence. The taxing powers for schools and water works, it defined with exactness. It is not to be supposed that the purpose was to leave the taxing power for general purposes only vague and indeterminate. A chief concern of all city charters is to make, within constitutional limitations, adequate provision for the public needs confided to the care of mu-

nicipal government. Taxing powers granted, if they are to prove a
capable means to that end, must be stable powers. A principal ob-
ject of such charters is to make them so by defining their limits with
precision. A taxing power with its limits made variable by the
law conferring it according merely to the possible future au-
thorization of other unascertained and unknown taxes, and there-
fore without any assurance as to the extent to which it might be
exercised for any given period, is but an empty power. Such a
power would be vain because altogether unreliable in there being
no certainty as to its continued existence, and its being impossible
for that reason to make provision for the public necessity in de-
pendence upon it.

This charter should be construed, therefore, if its language rea-
sonably admits of it, as consistent with an intention to fix the
measure of the City's taxing power for general purposes as definitely
and certainly as that of any other taxing power granted by the
charter. To subserve those purposes was as vital to the City as
the making of proper provision for its public schools. The public
interest centered in them as well as in the schools, and rested no
less upon the continuance of the City's power in their regard.
Without a proper taxing power exercisable for their account, the
City would have been impotent to perform the essential duties of a
municipal government. It was important, not only that such a
power be conferred, but that as conferred it subsist not impaired.
Full recognition of this ought to be attributed to the makers of
the law which comprised the charter. Laws are to be interpreted
in the light of the purposes they are intended to accomplish.

The taxing power conferred by the charter for general purposes
of $1.75 on the $100 valuation was, in the exact language of the
provision, to be inclusive of "the school tax that may be levied by
the board of trustees of public schools, as provided in this Act."
It was not to be inclusive, in addition to the school tax authorized
by the Act, of all possible school taxes, then unknown and hence
wholly uncertain, which might be authorized by future changes in
the Constitution and laws. The only school tax authorized "as pro-
vided in the Act" was a maximum tax of 50 cents on the $100
valuation. The taxing power for general purposes of $1.75 on the
$100 valuation was therefore to be subject to diminution to the
extent of the then authorized 50 cent school tax, but no further.
This is plainly the meaning of the charter provision. The con-
struction urged by the Attorney-General would leave the City's
general taxing power undetermined by definite law, and in the
precarious position of being measured wholly by future authorized
school taxes. In our view, it is measured by the charter, as it
ought to be. Its limits are defined by the declaration that its
maximum amount shall be $1.75 on the $100 valuation, less the

authorized school tax of 50 cents, or, in other words, $1.25 on the $100 valuation.

The objection made to the $400,000 water works bonds is that they, with their necessary special tax, were voted at an election where only qualified property tax paying voters, instead of simply qualified voters, were allowed to participate. We do not regard the objection as tenable. It was necessary that the special tax for these bonds have the approval of the qualified voters of the city at an election ordered according to the referendum provisions of the charter. Under the referendum provision of the charter governing bond elections, as this one was, only qualified voters paying taxes on property in the city may vote in such an election. Necessarily, at a bond election ordered according to that provision, only such voters were entitled to vote.

The mandamus is granted.

*Mandamus granted.*