**CITY OF FORT WORTH v. ZANE-CETTI**
(No. 723-4354.)

(Commission of Appeals of Texas, Section A. Dec. 10, 1925.)

1. **Schools and school districts ⬟25—City government distinct from that of school district, though territories coincident.**

An independent school district, created under Const. art. 7, § 3, is a municipal corporation sui generis, and its government is entirely separate from a city, the territory of which is coincident with it, even though a city or town is constituted an independent school district, under Const. art. 11, § 10.

2. **Schools and school districts ⬟25—Home rule amendment does not affect provisions for government of independent school district.**

The home rule amendment of 1912, replacing Const. art. 11, § 5, affects only powers of ordinary municipal corporations, and not independent school districts, coextensive with cities, regulated by Const. art. 7, or Rev. St. 1911, arts. 2876-2879, as amended by Acts 35th Leg. (1917) c. 169 (Vernon's Ann. Civ. St. Supp. 1918, arts. 2876-2879), and Rev. St. 1925, arts. 2799-2801, notwithstanding Const. art. 11, § 10, providing that city machinery can be used for government of school district, was left unchanged.

3. **Schools and school districts ⬟101—Tax for school purposes in excess of maximum allowed by city charter can be authorized only by property taxpayers.**

A tax for school purposes in excess of maximum allowed under charter of city of Fort Worth, which created independent school district for same territory, held invalid, where election to approve same was not restricted to property taxpayers, notwithstanding the home rule amendment of 1912, superseding Const. art. 11, § 5.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Suit by Carl Zane-Cetti to enjoin the City of Fort Worth from collecting a tax. A judgment sustaining a general demurrer was reversed and remanded by the Court of Civil Appeals (269 S. W. 130), and defendant brings error. Affirmed.

R. M. Rowland, R. E. Rouer, and Gillis Johnson, all of Fort Worth, for plaintiff in error.

I. H. Burney and A. J. Clendenen, all of Fort Worth, for defendant in error.

**Statement of the Case.**

NICKELS, J. During the year of 1922, the city of Fort Worth, Tex., a city having more than 5,000 inhabitants, was operating under a charter granted by special act of the Legislature in 1909 (Sp. Laws 1909, c. 31). This statute also created an independent school district for the same territory, and provided for its government through the city's officers, etc. The rate of taxation for school purposes as fixed in the statute was 50 cents on each $100 of taxable value. This maximum appears to have been increased somewhat after 1912, through purported authority of so-called "charter amendments," adopted under the claimed authority of the "home rule amendment" to the Constitution, § 5, art. 11. July 11, 1922, the governing authorities of the city issued the appropriate proclamation and notices of an election to be held July 22, 1922, and submitting to a vote of all the qualified voters of the territory five different propositions as proposed charter amendments, the fifth of which, if adopted, would in form authorize the levy and collection of a tax of 86 cents on each $100 of taxable value for "the maintenance and use of the public free schools of the city of Fort Worth for each current year." This, of course, amounted to an increase of 36 cents in the maximum as authorized in the charter

---

⬟For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

granted by the Legislature, and a substantial increase over what had been subsequently authorized by prior "charter amendments." Suffrage at the election was not to be, and was not, restricted to the "property tax paying" voters. At the election there were cast 7,822 votes in favor of the fifth proposition and 3,253 votes against it. The returns were duly canvassed, the result declared, and the proper authorities thereupon proposed to collect the increased tax upon and against the property of defendant in error.

This suit was filed by him, and upon appropriate allegations, etc., he sought to enjoin the collection of such tax upon the ground that the increased tax was and is void, because it was not authorized by an affirmative vote of the qualified property "tax paying voters." Upon hearing, a general demurrer interposed by the city, and presenting a proposition that the "home rule amendment" to the Constitution permitted such authorization at an election participated in by "qualified voters," whether "property tax payers" or not, was sustained, and (Zane-Cetti having declined to amend) final judgment was rendered against him. From the judgment he prosecuted his appeal to the Court of Civil Appeals for the Second District, etc. The case, on appeal, was transferred to the Court of Civil Appeals for the Third District. That court reversed the judgment of the district court and remanded the cause. 269 S. W. 130.

The case is in the Supreme Court on assignments presenting the claim that section 5, art. 11, Constitution of Texas, as amended in 1912, together with a portion of chapter 169, Acts of 1917, —— Session (articles 2876–2879, Vernon's Tex. Civ. & Crim. Stat. 1918 Supp.; articles 2798–2801, R. S. 1925), authorizes charter amendments to be adopted at elections participated in by voters, who are not property owning tax payers, even though the effect of such amendments is to authorize increased taxation for school purposes.

### Opinion.

[1] The source of the legislative power to create, or define an independent school district is to be found in section 3, art. 7, of the Constitution. Such a district is a municipal corporation, sui generis. City of Rockdale v. Cureton, Attorney General, 111 Tex. 136, 229 S. W. 852. The territory of a city and the territory of a district may be exactly coincident, and for the distinctive purposes separate governments may be provided to operate separately, but harmoniously, within the common orbit. Simmons v. Lightfoot, Attorney General, 105 Tex. 212, 215, 146 S. W. 871; Munson v. Looney, Attorney General, 107 Tex. 263, 268, 172 S. W. 1102, 177 S. W. 1193. Or, in virtue of the terms of section 10, art. 11, of the Constitution, and for convenient administrative purposes, "the Legislature may constitute any city or town a separate and independent school district." Such a combination of the two municipal corporations, each sui generis, does not take from either its distinctive features. City of Rockdale v. Cureton, Attorney General, supra. By special act, in 1909, the Legislature used its power under section 5, art. 11, of the Constitution (as the section then existed) to grant a charter to the city of Fort Worth, and at the same time used the authority given it by section 3 of article 7 and section 10 of article 11 to create and provide for an independent school district in the same territory. City of Fort Worth v. Cureton, Attorney General, 110 Tex. 590, 222 S. W. 531, 532. While the two corporations were provided for in the same statute, and have some officers in common, "the two are not to be confused" (City of Rockdale v. Cureton, Attorney General, supra); each remains subject to distinctive limitations of power, although they are jointly affected by other regulations. It is to be remembered always that the function of the "school district" is provided for in the "educational article" (7) of the Constitution while the general municipal purposes find source in another article.

[2] The home rule amendment of 1912 was intended to be, and is, a substitute for old section 5 of the latter article. Primarily, at least, it has to do with the powers of a city regarded as an ordinary municipal corporation and not as a "school district." There is nothing apparent, therefore, in the general purposes of the home rule amendment to indicate that the restrictions on "school districts" imposed by article 7 were intended to be removed or modified. It is true that section 10 of article 11 was not changed, and it results that, in framing their charters or amendments for general purposes, "home rule cities" may provide the needed machinery for joint government of the city and the district. But in this respect the matter is left as it was before, except that the power to establish and regulate the "city" as such has been (measurably) transferred from the Legislature to the voters. Eastham v. Steinhagen, 111 Tex. 597, 243 S. W. 457. And the language of the home rule amendment evidences great care to remove any ground for argument that the limitations on "districts," etc., are destroyed or changed, for it declares, "No charter or ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the state" (e. g. article 7), "or of the general laws enacted by the Legislature" (e. g. articles 2876–2879, R. S. 1911). In passing, it may be remarked that presence of this language in the "amendment" answers or renders inapplicable anything definitely stated in Garitty v. Halbert, 235 S. W. 231 (in respect to the subject of the present controversy), contrary to what was held by the honorable Court of Civil Appeals

in this case. In Garitty v. Halbert, the court indicated its belief that there was no conflict between the provision of the Corsicana charter there in question and section 3 of article 7 of the Constitution, but the definite ruling was that, "if in fact any conflict did exist, section 5 of article 11" (i. e. the home rule amendment) "would prevail as being the last expression of the sovereign will." That ruling, as is obvious, ignores the plain caution against nonconflict embraced in the terms of the later amendment. The "last expression of the sovereign will" is that no thing inconsistent with other provisions of the Constitution shall be injected into a home rule charter.

[3] The controversy here involves the authority of Fort Worth primarily as a "school district" whose warrant of existence is to be found in section 3 of article 7. The government of the "district" given to the city of Fort Worth finds authority solely in section 10 of article 11. Section 10 of the one article does not purport any change in section 3 of the other; hence, for reasons already stated, the latter must be read as a definite limitation on what may validly find repose in the charter, or charter amendments, made pursuant to the present section 5 of article 11.

Amongst the provisions of section 3, art. 7, are these:

"The Legislature shall be authorized to pass laws for the assessment and collection of taxes in all said districts, and for the management and control of the pubilc school or schools of such district."

"And the Legislature may authorize an additional ad valorem tax to be levied and collected within all school districts, heretofore formed or hereafter formed, for the further maintenance of public free schools, and the erection and equipment of school buildings therein; provided, that a majority of the qualified property tax paying voters of the district, voting at an election to be held for that purpose, shall vote such tax, not to exceed in any one year fifty cents on the one hundred dollar valuation of the property subject to taxation in such district, but the limitation upon the amount of school district tax herein authorized shall not apply to incorporated cities or towns, constituting separate and independent school districts."

Some of the powers thus expressly delegated to the Legislature, and expressly preserved from encroachment by the home rule amendment, were exercised in the passage of chapter 169, Acts 1917 (Vernon's Tex. Civ. & Crim. Stat. 1918 Supp., arts. 2876–2879; articles 2798–2801, R. S. 1925). The terms of that statute must be read in the light of the constitutional provisions quoted, and given a meaning in harmony therewith if its terms permit. If there should be doubt arising in the application of any of the terms of the statute, that ambiguity will disappear on reference to the superior law; else the doubtful term becomes inoperative.

Article 2876, Vernon's 1918 Supp., plainly declares, as stated by the honorable Court of Civil Appeals, that:

"No tax shall be levied until an election shall have been held, at which none but property tax payers, * * * who are qualified voters of such independent school districts shall vote and a majority of those voting shall vote in favor thereof."

With a mere change of words that provision declares the mandate of the Constitution. We should not, therefore, expect to find, in subsequent terms, a different meaning, or a doubtful one, or the selection of a more general electorate.

The city urges, however, a different source of power is to be found in this language of the statute (article 2879):

"In a city or town that may now or hereafter constitute an independent school district, and where a special tax for school purposes has been voted by the people or provided by special charter, it shall be the duty of said board of trustees to determine what amount of said tax, within the limit voted by the people or fixed by special charter will be necessary for the maintenance and support of the school and for the erection and equipment of public school buildings for each current year," etc.

It is manifest that the "special charter," as granted by the Legislature (in 1909), gives no basis for what was attempted by the city, because the maximum there is fixed at 50 cents on the $100 of valuation. We need not consider whether the Legislature itself had the authority to provide for a higher maximum, without a vote of property tax payers, for it did not attempt to do so; hence the insistence of the city rests upon the proposition that the home rule amendment permits "the people," as contradistinguished from the "property tax paying voters," to amend the legislative charter by increasing the maximum to 86 cents on each $100 of taxable value, and thus to create a "special charter" such as is spoken of in the language just quoted. But this, at last, is the employment of non sequiturs to justify indirect achievement of that whose direct accomplishment is twice forbidden—inhibited once in section 3 of article 7 of the Constitution, and again in the home rule amendment's declaration against inconsistency. Restated, the city's contention fuses the two distinctive corporations whose "confusion" is to be avoided (City of Rockdale v. Cureton, Attorney General), and thus makes the home rule amendment's application to general municipal purposes extend to, and embrace, another and different purpose separately and specifically provided for in another and unmodified constitutional provision. No alchemy is to be found in mere terms, and the constitutional and statutory requirement of an affirma-

tive vote by a "property tax paying" electorate as a condition precedent to an additional tax burden cannot be dissipated by giving the levy another name.

Article 2799, R. S. 1925 (Vernon's 1918 Supp. art. 2876), is all comprehensive as to various forms of "district" government. In terms which bear no other meaning, it includes the result desired by the city of Fort Worth, and makes provision therefor in a way different from that employed. .In view of its generality and its harmony with the constitutional policy attempting to preserve somewhat the ancient doctrine of taxation with representation only, we are constrained to believe that the Legislature used the words "voted by the people" in the act of 1917 as signifying "voted by the people who are qualified therefor by the Constitution"; and that· interpretation does not deprive the language relied upon by the city of meaning. It then, as we think was intended, takes from the other officers of the corporation the discretion of passing upon the amount ("within" the maximum established) needed for any year, and vests the exercise of that power in the "board of trustees," etc.

We believe the honorable Court of Civil Appeals made the right disposition of the case, and to that end employed correct reasoning. We have added what has been said here because of the urgence made that the provisions of article 2801, R. S. 1925 (article 2879, Vernon's 1918 Supp.), as well as the true purpose of the home rule amendment, must have been ignored by that court.

· The conflict produced by the opinion of the Courts· of Civil Appeals in Garitty v. Halbert and in this case is resolved in favor of the latter opinion by the language of the home rule amendment, which requires conformity of charters to other constitutional provisions and the general law, as already stated. There is nothing in: City of Fort Worth v. Cureton, supra, adversely touching the proposition decided here. The validity of increases in school taxation was in nowise involved in that case—so far as shown, the increased school taxation may have been authorized by the proper electorate—all that was in question there was the validity, or not, of $400,000 of waterworks bonds, and their validity depended upon such a construction of the charter as would leave an aggregate taxation of $1.25 on the $100 of value for purposes other than school, and it was decided that subsequent variations in the amount authorized for school purposes did not affect, or reduce the portion ($1.25) of the total authorized rate (of $1.75) allocable to "general purposes."

The increased school tax mentioned in Eastham v. Steinhagen, supra, had, in fact, been authorized in the manner prescribed by law; no attack was made upon it on the ground that the property tax payers had not voted it, and, so far as was shown, suffrage may have been confined to them. That opinion, therefore, is not authority' for the city's contention here.

It is insisted that a ruling against the city's power will result in great confusion, etc. It is urged that there is "no way under the sun" or beneath "heaven" for securing the needed increased tax rate except the method pursued. We do not follow the courses of the sun beyond the boundaries of the Constitution and the general law of the subject, but we find there an adequate way, definitely marked out; namely, a favorable vote by those who are to take up the burdens. If confusion results (and it need not), it will be due to efforts to avoid, rather than tò conform, to lawful requirements. Power to accomplish the desired end is given, and the method of its accomplishment is definitely laid out; under familiar rules, the authority given cannot be used in a different manner. Foster v. City of Waco, 113 Tex. 352, 255 S. W. 1104; Parks v. West, 102 Tex. 11, 16, 111 S. W. 726.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.