## STATE v. CITY COMMISSION OF SAN ANGELO et al.

### No. 8598.

Court of Civil Appeals of Texas. Austin.

Jan. 21, 1937.

Rehearing Denied Feb. 3, 1937.

W. A. Stroman, Clyde Vinson, and B. A. Carter, all of San Angelo, for appellant.

Olin Blanks and R. G. Hughes, both of San Angelo, for appellees.

BLAIR, Justice.

This proceeding was instituted for a writ of mandamus to compel appellees, the officials of the city of San Angelo, Tex., to call an election to amend the charter of said city so as to provide for

a City Commission of five members elected from five districts, and a mayor elected at large, instead of the present City Commission of two commissioners and a mayor, all elected at large; and to further provide for a civil service system. The petition for the election was signed by the requisite number of qualified voters; but the city officials refused to call the election, on the sole ground that the charter of said city had been amended by an election in March, 1936, which resulted in divorcing the public school system from municipal control; and that both the Constitution and statute (Const. art. 11, § 5; R.S.1925, art. 1165) provide that "no city charter shall be altered, amended or repealed oftener than every two years." The trial court sustained this action of the city officials, and refused the writ of mandamus; hence this appeal.

The principle question presented is whether the election held in March, 1936, divorcing the public school system from municipal control, constituted an amendment to the city charter, or whether, as contended by appellant, the holding of the election was merely the exercise of one of the city's powers under its charter. We hold that the election and its result constituted amendment to the city charter.

The city of San Angelo adopted the home-rule amendment (article 11, § 5, Const.) in 1915, its charter providing for the appointment of members of the board of education by the City Commission. The election of March, 1936, resulted in the the adoption of a provision for electing the members of the board of education by the qualified voters. Before said election the members of said board were appointed by the City Commission; since said election the members of the said board cannot be appointed by the City Commission; but have been and are now serving by election of the qualified voters. Prior to the election, the schools were under "municipal control" through the appointment of the members of the board of education by the City Commission; after the election the "independent control of schools" was vested in a board of education, its members being elected by the qualified voters. The form of school government as authorized by the city charter prior to the election was therefore changed to another form by the election, which necessarily resulted in amending or altering the city charter. This election was held under the provisions of article 2783b, which authorizes the qualified voters to divorce their schools from "municipal control," and to provide for "independent control of schools" by an elective board of education.

In Keller v. Western Paving Co. (Tex. Civ.App.) 218 S.W. 1077, 1078, error refused, the court defined an amendment to a city charter as follows: "We regard the act in question as an amendment of existing charters, which the inhabitants may accept or reject. It enlarges the grant of powers already made, and is obviously amendment of charters, and it can make no difference that it does not contain the statement that it is an amendment. The act is complete in itself. The Legislature, itself, determined what powers municipalities should have, and the inhabitants were only permitted to decide whether or not to avail themselves of such grant of powers, and thus accept an amendment of their charter drafted by the Legislature."

Comparable to the paving statute discussed in the Keller Case is the statute (article 2783b) under which the March, 1936, election was held. It provided that its benefits and provisions must be adopted or accepted by the qualified voters, and before that could be done the municipal control must be changed, and that was the purpose of holding the election. By adopting the statute, the people necessarily enlarged the powers of the school government by accepting the benefits and provisions of the statute and by providing an additional and independent agency for the control of the schools; and when the people adopted the benefits and provisions of the statute by "providing for a board of school trustees to have control of its schools, they thereby changed the form of their school government to a board of trustees." Temple Ind. School Dist. v. Proctor (Tex.Civ.App.) 97 S.W.(2d) 1047, 1053, error refused. This action of the people necessarily resulted in the amendment or alteration of the city charter.

In Vol. 1 Words and Phrases, Second Series, 199, it is said that "the word 'amend' is synonymous with correct, reform, and rectify. * * * It indicates a change or modification for the better." Vol. 1, Bouv. Law Dict. 187. Other authorities define the word "amendment" to mean to add something to or withdraw something from that which has previously existed. Vol. 1 Words and Phrases, First Series, 369.

In Ballentine's Law Dictionary, it is said that "to alter means to make otherwise." From the same authority, we quote as follows: "The Standard Dictionary defines 'to alter' as meaning to cause to be different in some respect; to make some change in; to vary in some degree, without making an entire change. Webster's International Dictionary defines it as to make otherwise; to change in some respect, either partially or wholly."

A charter power to appoint school trustees by city officials is manifestly changed "in some respect," or varied "in some degree" by a charter provision for electing school trustees by the qualified voters. A charter power conferring "municipal control" of schools is necessarily altered or amended when that power is withdrawn by the qualified voters and placed in a board of education elected by the qualified voters.

It is not material to the question of whether the election of March, 1936, resulted in an amendment to or alteration of the city charter, that strictly municipal powers of the city were referable to or derived from the provisions of article 11 of the Constitution, while its power to control schools was referable to or derived from article 7 of the Constitution. Wherever the city may have derived its power of "municipal control" of schools, its charter provided for such control prior to the election of March, 1936, and both the Legislature and courts have recognized the validity of that power. The Legislature recognized the validity of such power when it enacted articles 2774, 2774a, and 2783b of our Statutes, which provide the methods of adopting or withdrawing municipal control of schools, and particularly by providing that the qualified voters might authorize or deny the exercise of such power by an election called for such purposes.

Nor do the cases of City of Rockdale v. Cureton, 111 Tex. 136, 229 S.W. 852; City of Fort Worth v. Zane-Cetti (Tex. Com.App.) 278 S.W. 183; Hatcher v. State, 125 Tex. 84, 81 S.W.(2d) 499, 98 A. L.R. 1213; and Temple Ind. School Dist. v. Proctor (Tex.Civ.App.) 97 S.W.(2d) 1047, furnish any authority for the contention of appellant that the election of March, 1936, which resulted in the divorcement of "municipal control" of schools, did not constitute an amendment to or alteration of the city charter. These cases merely hold that when a city assumes control of its schools, it acts in a dual capacity; that is, as a municipal government and as a government controlling the public schools; and the remaining questions decided relate to the exercise of taxation or other powers in one or the other governmental capacity. Neither case discusses what would constitute a charter amendment or alteration.

Nor do the cases of City of Waco v. Higginson (Tex.Com.App.) 243 S.W. 1078, and Eastham v. Steinhagen, 111 Tex. 597, 243 S.W. 457, furnish any analogy to the question here presented. They hold that the mere exercise of a charter power conferred upon a city, such as an increase of tax rates by popular vote, or the extension of city limits by popular vote, does not constitute charter amendments or alterations. The power to tax or extend boundaries was not destroyed in either instance, while in the instant case the power of "municipal control" of schools was withdrawn and destroyed by the election of March, 1936, and the form of government of schools was changed.

Nor does article 1170, R.S.1925, provide the only method of amending city charters. Article 2783b, under which the election of March, 1936, was held, provides the method of amending city charters for divorcement of municipal control of schools, and was enacted for the express purpose of doing so; and having expressly authorized such method of amendment, said article controls over the provisions of the general laws for amending city charters generally.

Nor may appellant raise the question in this proceeding of the failure to publish notices and send copies thereof to the voters prior to the election. Such matters constitute mere irregularities, which could have been determined by a contest of the election, and cannot be raised in collateral proceedings. Contests of elections to amend home-rule charters are governed by the rules and statutes applicable to election contests generally. Bassel v. Shanklin (Tex.Civ.App.) 183 S.W. 105; State v. Fletcher (Tex.Civ. App.) 50 S.W.(2d) 450; Carroll v. Gross (Tex.Civ.App.) 37 S.W.(2d) 286; Garitty v. Halbert (Tex.Civ.App.) 235 S.W. 231.

The judgment of the trial court will be affirmed.

Affirmed.