

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
~~WILLXXXXXXXXXXXX~~xxx
ATTORNEY GENERAL

Honorable J. A. Guest
County Attorney
Camp County
Pittsburg, Texas

Dear Sir:

Opinion No. O-1106
Re:Independent school district taking
over schools of a city under
Article 2783b has the right to
collect delinquent taxes assessed
by the city for school purposes.

We have your letter in which you say:

"The city of Pittsburg has been operating for the past forty
years under Article 2783b, Civil Statutes, and has been
levying One Dollar for school purposes on each One Hundred
Dollars valuation. An election was held April, 1938, at which
election the separation of the schools from the city was
duly authorized. There is now, on the city's tax rolls,
some Twenty-five Thousand Dollars in delinquent taxes that
were levied by the city for school purposes. The Board of
Trustees of Pittsburg Independent School District, elected
since the divorcement of the city and schools,are desirous
of collecting the delinquent school taxes now on the city's
tax rolls. Since they have assumed the outstanding bonds
and indebtedness against the school district, they think
they have authority to collect said delinquent taxes and
apply same for school purposes."

As we understand it the territory of the district has not been changed.
You desire to know whether or not the present Pittsburg Independent School
District has the right to collect the taxes that were assessed and levied
for school purposes by the city of Pittsburg prior to the change in the
school district's organization in 1938 and that have not yet been paid.

In 1905 the Legislature passed a law known as Senate Bill 218 of the 29th
Legislature, Regular Session, which still remains on the statute books
of Texas as Article 2768 and 2771, Revised Civil Statutes, and which
read as follows:

"Article 2768. Any city or town in this State may acquire the exclusive control of the public free schools within its limits. Any city or town which has heretofore, under the Act of March 15, 1875, or any subsequent law, assumed control of the public free schools within its limits, and has continued to exercise the same until the present time, or any city or town which may hereafter determine so to do by majority vote of the property tax payers of said city or town voting at an election held for that purpose, may have exclusive control of the public free schools within its limits."

"Article 2771. Schools thus organized and provided for by incorporated cities and towns shall be subject to the general laws, so far as the same are applicable; but each city or town having control of schools within its limits shall constitute a separate school district, and may provide for the organization of schools and the appropriation of its school funds in such manner as may be best suited to its population and condition."

The authority for these statutes is found in Article VII, Section 3, and Article XI. Section 10, of the Constitution of Texas, which read in part as follows:

"Sec. 3. . . . the Legislature may also provide for the formation of school district (s) by general laws; . . ."

"Sec. 10 The Legislature may constitute any city or town a separate and independent school district. . . ."

In 1935 the Legislature passed a law known as House Bill 831 of the 44th Legislature, Regular Session, which is now codified as Article 2783o, Vernon's Annotated Civil Statutes of Texas. It provides in section 1, 2, 3, and 4 that "the term 'municipal school district' . . . shall include any city or town constituting a separate and independent school district under authority of Section 3, of Article VII of the Constitution, and/or Section 10, Article XI, of the Constitution, boundaries of the school corporation being the same as the boundaries of the city or town" in those cases where the city has a population of 30,000 or less, and that "when any 'municipal school district' . . . shall desire to have the public school within its limits separated from municipal control" the same shall be done by one hundred voters petitioning for an election, and an election being held in which all of the qualified voters decide whether or not the schools should be separated from the city, and if a majority vote for such a separation then an independent school district is thereby created, and said law (House Bill 831, 44th Leg.) then provides in sections 5, 7, 8, and 9, as follows:

"Sec. 5. Except as herein denied or limited, all the powers
conferred upon independent school districts and/or towns
and villages incorporated for free school purposes only, by
Title 49, of the Revised Civil Statutes of Texas, of 1925,
and amendments thereto, including the right to annex contiguous
  territory for school purposes, and the right to levy taxes
and  issue bonds for school purposes, as provided by General
Law, are hereby conferred upon any independent school district
separated from municipal control under the provisions of this
Act; . . ."

"Sec. 7. That the Board of Education or board of trustees of
such independent school district, after separation from
municipal control, shall have authority to provide for the
taxes of said independent school district to be assessed by
the Assessor and Collector of Texas of the city of which such
school district was formerly a part, or to have the taxes of
said district assessed and collected by an assessor and
collector appointed by the board of trustees. Such assessor
and collector shall be allowed and paid such compensation as
is now or may be hereafter provided by law."

"Sec. 8. The title and rights to all property owned, held,
set apart or in any way dedicated to the use of the public
schools of the city or town, and/or heretofore vested in
such city or town and/or the mayor, chairman of the commission,
city council, city commission or board of school trustees
of such city or town, prior to separation from municipal
control as herein authorized and provided, shall be and are
hereby invested in the Board of Education or board of trustees
of such independent school district, after separation from
municipal control, and shall be managed and controlled by
the Board of Education or board of trustees thereof, as is now
or may hereafter be provided by law."

"Sec. 9. All bonds issued by and outstanding against any
such city or town, as a municipal school district, and all
obligations, contracts and indebtedness existing against the
city or town, as a municipal school district shall become the
obligations and debts of the independent school district at
the time of its separation from municipal control, and the said
independent school district, after separation from municipal
control, shall be held to have assumed the discharge of all such
obligations, contracts, and indebtedness, and the same shall  be
enforceable and collectible from, paid off and discharged by  the
said independent school district, as if originally created by it as
a separate and independent school district; and it shall not be
necessary to call an election within and for such district for
the purpose of assuming such bonds and other indebtedness."

We assume that the public schools in the city of Pittsburg were controlled by the city under the authority of Article VII, Section 3 and Article XI, Section 10, of the Constitution, and Articles 2768 and 2771 of the Statutes (quoted above), and that the change of the control of the schools from the city to the newly created independent school district was under the authority and procedure of Article 2783b, which did not become a law until 1935.

We think that prior to the change in the control of the Pittsburg schools, by a vote of the people, in 1938, the city of Pittsburg constituted a school district, and that its status as a school district was distinct from its status as a municipality, even though the same city council or governing body governed the schools and the municipality; and when the change occurred in 1938 it merely amounted to changing the form and name of the school district. The new independent school district was the same district as the former city school district, having a different name and a different governing organization. This belief on our part is supported by the case of Temple Independent School District v. Proctor, (Tex. Civ. App.) 97 S. W. (2) 1051, in which the court, speaking through Justice Baugh, said:

> ". . . It is now settled, however, that, where such city does assume control of its schools, such control, so far as the schools are concerned, does not become merged into and become a part of the municipal government as such. And where the city commissioners or city council retain control of its public schools it acts in a dual capacity -- one as a governing body of the city in its status as a municipality, and the other as the controlling or governing board of its schools. The two capacities are not to be confused. City of Rockdale v. Cureton, 111 Tex. 136, 139, 229 S. W. 852; City of Fort Worth v. Zane-Cetti (Tex. Com. App.) 278 S. W. 183. In so far as it acts in its strictly municipal governmental capacity, its powers are referable to Article 11 of the Constitution and title 28 of the R. S. (Article 961 et seq., as amended (Vernon's Ann. Civ. St. Art. 961 et seq.). Whereas, in the management and control of its schools, its powers are referable to Article 7 of the Constitution and title 49 of the R. S. (Article 2584 et seq., as amended (Vernon's Ann. Civ. St. Art. 2584 et seq.) ..."

It is apparent from a reading of Article 2783b that the board of trustees of the independent school districts created under the act have all of the ordinary powers of a school district governing body, including "authority to provide for taxes", and that "the title and rights to all property owned, held or in any way dedicated to the use of the public schools of the city . . . prior to the separation from municipal control" vests and passes to the new independent school district and is subject to its; control, when such new district is created, and that the bonds and indebtedness and obligations of such city, "as a municipal school district",

are assumed and taken over by the newly created independent school district. We think this indicates that it was the intention of the legislature for the new independent school district to take the place of the old city district and for the new district to take over everything, both tangible and intangible, from the old district, including assets and liabilities. We can not conceive of the legislature intending for the new district to be obligated to pay the old district's debts without having the right to collect the money due the old district. When one person takes over another person's business he ordinarily acquires the "accounts receivable" as well as the "bills payable". We have been unable to find any Texas appellate court case on this particular question, but we do find significant language in 56 Corpus Juris 271, as follows:

". . . Where a district is dissolved, abolished, or destroyed, and one or more new districts are created from the territory thereof, or its territory is annexed to one or more existing districts, the new or other district or districts, in the absence of contrary statute, become and are entitled to all the property and rights of the old district, . . ."

The authority to collect these delinquent taxes was clearly one of the "rights of the old district," and the new district is entitled to that right.

Our answer to your question is that, under the facts you have given us, the present Pittsburg Independent School District has the right to collect the taxes that was assessed and levied for school purposes by the city of Pittsburg prior to the change in the school district's organization in 1938 and that have not yet been paid.

Yours very truly

ATTORNEY GENERAL OF TEXAS

s/ CECIL C. ROTSCH

By CECIL C. ROTSCH
Assistant

CCR:FL-ldw

APPROVED AUG. 15, 1939
s/ GERALD C. MANN
ATTORNEY GENERAL OF TEXAS

APPROVED OPINION COMMITTEE
BY R. W. F.CHAIRMAN