

# THE ATTORNEY GENERAL
## OF TEXAS


**GROVER SELLERS**
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Hon. T. M. Trimble, First Assistant
State Department of Public Instruction
Austin, Texas

Dear Sir:

Opinion No. 0-7097

Re: Status of tax rate of Independent School District separated from city control; authority of city tax collector to collect taxes for separated ISD; and definition of term "property owners", as regards qualification of electors in ISD election.

We are in receipt of your letter in which you submit the following questions on behalf of the Abilene Parent-Teacher Council:

"1. Under the Abilene City Charter the present tax rate for the city is $2.50, with $1.70 of this amount provided for general city purposes and the balance of 80¢ alloted to the public schools. If the people vote to separate, what would be the status of the tax rate for the newly created fiscally independent school district?

"2. If an election to separate the schools from the municipality (City of Abilene) carries, how long will it be before the board of education of the newly created district can call another election for the purpose of voting a tax levy, or a raise in tax rate?

"3. If the election held on the question of school and city separation is approved by the people, what would be the status of our school finances provided the people then voted against a proposition to raise the tax rate?

"4. Can the proposition of voting upon school and city separation be placed on the same ballot with matters relating to the changing of the city charter, such as the city manager form of government, the method of electing city commissioners, etc.?

"5. After the separation of schools and municipality has been approved by a vote of the people, as provided

in Article 2783a of the Revised Civil Statutes of the State of Texas, is it legal to permit one taxing agency to collect the taxes of both the city and the public schools? What legal procedure is necessary to establish such a taxing agency?

"6. In an election for the purpose of voting upon a tax rate raise, who are considered to be 'property owners'?"

1.

According to the 1940 Federal Census, the City of Abilene has a population of 26,612; so far as we are advised, the 1940 census is the latest federal census taken in the City. Your first question regarding the status of the tax rate of an independent school district which has been legally separated from municipal control is therefore referable to Art. 2783b, V.A.C.S. (Ch.88 Acts 44th Legislature). Sections 5 and 9 of the act have particular application; they read respectively:

"Sec. 5. Except as herein denied or limited, all the powers conferred upon independent school districts and/or towns and villages incorporated for free school purposes only, by Title 49, of the Revised Civil Statutes of Texas, of 1925, and amendments thereto, including the right to annex contiguous territory for school purposes, and the right to levy taxes and issue bonds for school purposes, as provided by General Law, are hereby conferred upon any independent school district separated from municipal control under the provisions of this act; provided however, that the trustees of any independent school district that may hereafter be separated from municipal control under the provisions of this Act, shall have the power to levy and collect an annual ad valorem tax not to exceed One Dollar ($1) on the One Hundred Dollars ($100) valuation of taxable property of the district, for the maintenance of the schools therein, and, in addition thereto, an annual ad valorem tax on each One Hundred Dollars ($100) valuation of taxable property of the district sufficient to pay the principal of and interest on all bonds issued for school building purposes outstanding against the municipal school district at the time of separation from municipal control, and the principal of and interest on all bonds to be issued hereafter by any such independent school district; provided, that nothing herein shall be construed as abrogating or in any manner repealing or affecting any maintenance tax and/or bond taxes heretofore voted, authorized and/or levied on taxable properties situated within the limits of the municipal school district; provided further, that no increase in the maximum rate of school maintenance tax and/or bond debt of any such district shall be authorized

until after an election shall have been held where a majority of the tax-paying voters, voting at said election, shall have voted in favor of said tax, or the issuance of said bonds, or both, as the case may be; and provided further, that the bonds of any such district shall not exceed in amount seven (7) per centum of the assessed value of taxable property of such district, as shown by the last annual assessment of such property."

"Sec. 9. All bonds issued by and outstanding against any such city or town, as a municipal school district, and all obligations, contracts and indebtedness existing against the city or town, as a municipal school district, shall become the obligations and debts of the independent school district at the time of its separation from municipal control, and the said independent school district, after separation from municipal control, shall be held to have assumed the discharge of all such obligations, contracts and indebtedness, and the same shall be enforceable and collectible from, paid off and discharged by the said independent school district, as if originally created by it as a separate and independent school district; and it shall not be necessary to call an election within and for such district for the purpose of assuming such bonds and other indebtedness."

The scope of your first inquiry is not clear to us; in the light of your third question, however, we interpret the first as inquiring whether the Abilene School District after separation from city control has power without an election to impose the rate of tax for maintenance (within the maximum specified by Sec.5) and for bonds outstanding at time of separation, as were authorized for school purposes prior to divorcement of the district from City Control. Section 5, supra, expressly confers upon the trustees of the district after separation, the power to levy maintenance and bond taxes, and stipulates "that nothing herein shall be construed as abrogating or in any manner repealing or affecting any maintenance and/or bond taxes heretofore voted, authorized and/or levied on taxable properties situated within the limits of the municipal school district. . ." (Emphasis ours)

By our letter of August 7th we inquired whether any maintenance taxes for school purposes had been heretofore voted in the municipally-controlled Abilene school district, at an election at which only qualified taxpaying voters who had duly rendered their property for taxation were allowed to vote. From the response to that inquiry, we understand that the only action taken with reference to school maintenance taxes was the adoption of the charter provisions which in effect provide that the school and city taxes together shall

not exceed $2.50 per hundred, to be divided not in excess of $1.70 for city purposes and not in excess of $.80 per hundred "for the support and maintenance of the public free schools within said city and for the purpose of paying the interest and creating a sinking fund on bonds for school buildings. . . . . ." It appears that the amendment to the charter was submitted to and was adopted by majority vote of the qualified voters of the city of Abilene at an election held in the city on January 19, 1924.

The adoption of a charter amendment relative to division of tax rate between a municipally-controlled school district and the municipality does not constitute the voting of a maintenance tax for school purposes, as contemplated by Section 3 of Article 7 of the Constitution. City of Ft. Worth v. Zane Cetti, (Com. App.) 278 S.W. 183; see also, Treaccar v. City of Galveston (Tex. Civ. App., error refused) 28 S.W. (2) 887. Under the facts here presented, you are therefore advised that the Abilene school district has no maintenance tax voted and authorized, within the contemplation of Section 5 of Article 2783a, supra. Upon divorcement of the district from City control, the district would have no maintenance taxes, until such tax had been voted conformably to the Constitution and applicable statutes. City of Ft. Worth v. Zane Cetti, supra; Burns v. Dilley ISD, (Com. App.) 295 S.W. 1091; Pyote I.S.D v, Dyer, (Com. App.) 34 S.W. (2) 578.

We turn then, to the question of the power of a district after divorcement from city control, to levy taxes for out-standing bonds issued for school buildings. Under the separation act, title to the buildings after separation belongs to the school district; and under Section 9, above quoted, it is charged with the outstanding indebtedness incurred therefor, and is empowered to levy the taxes authorized and voted for the purpose of paying interest on such bonds, and for the redemption of the principal at maturity. In view of these express provisions, it is but necessary to ascertain whether the legislative mandate is valid.

Whether the school district following divorcement be regarded as the same political entity* or as a new corporation successor to that existing before separation, we think the legislative power relating to establishment of school districts is sufficiently broad to charge the district after separation with responsibility for the outstanding debt insofar as to empower its officials to impose the taxes voted and irrevocably pledged by contract to support of the bonds, within the area liable to such taxes before such separation from municipal control. El Dorado I.S.D. v. Tisdale, (Com. App.) 3 S.W. (2) 420; Ibid., (Tex. Civ. App.) 287 S.W. 147; Tod v. City of Houston; (Com. App.) 276 S.W. 419; Crabb v. Celeste I.S.D. 105 Tex. 194, 146 S.W. 528, 39 LRA (NS) 601. We think this conclusion in no wise conflicts with the rule established by

our decisions that when a new school district is established by the Legislature, it may not be empowered to impose school taxes until such taxes are voted by the qualified taxpaying voters of the newly established district conformably to Section 3 of Article 7 of the Constitution. Burns v. Dilly ISD, supra; Crabb v. Celest I.S.D., supra; Pyote ISD v. Dyer, supra; Bigfoot ISD v. Genard, (Tex. Civ. App.) 116 S.W. (2) 804 (aff'd., Com. App.) 129 S.W. (2) 1213.) Abolition of a school district on behalf of which school maintenance taxes were authorized to be imposed, destroys the authorization for imposition of its maintenance taxes; the power cannot be conferred upon a successor corporation, except subject to vote of the qualified taxpaying voters of the new district. Bigfoot I.S.D. v. Genard, supra; Pyote I.S.D. v. Dyer, supra. The Legislature cannot abolish an existing district,

---

#On this problem, attention is invited to our opinions Numbers O-4490 and O-6059 and the following cases reviewed therein; Houston v. Gonzales I.S.D., (Com. App.) 229 S.W. 467; City of Rockdale v. Cureton, 111 Tex. 136, 229 S.W. 852; City of Ft. Worth v. Zane Cetti, (Com. App.) 278 S.W. 183; M.K. & T. R.R. Co. v. City of Whitesboro, (Com. App.) 287 S.W. 904; City of Ft. Worth v. Cureton, 110 Tex. 590, 222 S. W. 531; City Belton v. Harris Trust and Savings Bank,(Civ. app.) 273 S. W. 914 (aff'd, 283 S. W. 164) Treaccar v. City of Galveston, (Civ. App.; error refused) 28 S. W. (2) 887; Temple I.S.D. v. Proctor, (Civ. App.; error refused) 97 S. W. (2) 1047; and City of El Paso v. Carroll, (Civ. App.; error refused) 108 S.W. (2) 251. however, so as to destroy the power of taxation for support of outstanding bonds issued by such district. Sec. 16, Art. 1, Constitution of Texas; Burns v. Dilley I.S.D., supra. Where such a district is merged with another, or otherwise is altered in its legal aspect, provision for discharge of its contractual obligations must be made or retained, so that the obligations of its contracts will not be impaired. The obligations of a predecessor school district cannot be imposed upon a successor in such manner as without vote of taxpayers of the district as altered, to subject to taxes for discharge thereof, property not included within the boundaries of the predecessor. Burns v. Dilley I.S.D., supra; Crabb v. Cleste I.S. D., supra. But we see no objection to the legislative power to impose upon the trustees of the successor district, the authority and the responsibility of levying upon properties subject thereto, such taxes as are requisite to discharge the obligations of a predecessor district. To the extent necessary to discharge its obligations, it well may be considered that the former district is not and cannot be abolished; and that the officers of the successor, ex officio, are empowered to exercise the powers of the predecessor, insofar as they must continue to exist under its contractual liabilities.

If any change in area was made subsequent to issuance of any series of bonds now outstanding against the school district, it would be necessary that the enlarged district have assumed the outstanding debt in order to charge with taxes therefor any property not located within the district at time of issuance of such bonds. For that reason, it is not possible to give a categorical answer to the question whether the district after divorcement can levy taxes on all property within its boundaries to support outstanding debts. In order to avoid confusion from any such changes made subsequent to issuance of such bonds, and before divorcement, if the separation election carries it would be advisable that the question of assumption of indebtedness be submitted to vote of the district.

Your attention is invited to Article 2784e, Vernon's Annotated Civil Statutes (Chap. 304, Acts 49th Legis.) whereby the maximum rate of tax permitted to be voted in independent and common school districts was increased to $1.50 on the hundred dollars valuation; and to Articles 2785, et seq. relating to the procedure to be followed in holding school tax elections.

2.

Your second inquiry is governed by Article 2785, Revised Statutes, as amended, Ch. 476, Acts 2nd C. S. 44th Legislature. Under its terms, maintenance tax elections may be called upon petition signed by twenty or more, or a majority of those entitled to vote at such election. At least ten days notice of such election given pursuant to the requirements of the statute is required.

3.

Article 2785, supra, contains the following provisions, pertinent to your third question:

"If said maintenance tax proposition is defeated at an election held for such purpose, no other election shall be held therefor within one year from the date of said election."

4.

Your fourth question is answered in the affirmative. In our opinion, a city may place the proposition of separating the school system from the city on the same ballot with other propositions relating to changes in the city charter; see the case of State v. City Commission of San Angelo (Civ. App.) 101 S.W. (2d) 361, which expressly held that an election divorcing the public school system from municipal control constituted an amendment to the city charter.

5.

Two statutes enacted by the Regular Session of the 49th Legislature deal with the subject matter of your fifth inquiry.

We see serious questions as to validity of the earlier of these acts, viz., Chapter 176, which assumed to amend Articles 2791 and 2792, R. C. S., 1925. We pretermit discussion of these questions, however, in view of the fact that the Legislature subsequently in the session enacted another act on the same subject, which does not call-up the same objections.

Under Chapter 351, Acts Reg. Session, 49th Legislature (Art. 1066b, V.A.C.S.) an independent school district (among other public corporations) which is located wholly within the boundaries of another municipality, is empowered to authorize and to designate the Tax Assessor, Board of Equalization and Tax Collector of the including municipality to act as Tax Assessor, Board of Equalization and Tax Collector for the school district. As the City of Abilene, and Abilene School District occupy the same geographical area, the school district may authorize, under Chapter 351, the City Assessor, Board of Equalization and City Collector by virtue of their respective offices, to perform for the school district the same functions they exercise on behalf of the City.

We do not believe Chapter 351 attempts to authorize the holding of two offices, contrary to the Constitution. (Section 40, Art. XVI as amended). The officials who are authorized to be designated, by virtue of their offices assess for taxation the very properties on behalf of the including agency as they are directed to assess for the included municipality; and collect from the same taxpayers, the taxes imposed upon such assessments. In effect, Chapter 351 allows the included municipality to adopt as far as applicable the rolls of an including public corporation; and to utilize the services of the officers of the including agency, which they have performed and necessarily must perform in their capacities as officers of the including agency. See First Baptist Church v. City of Ft. Worth, (Com. App.) 196; Of., Odem v. Sinton I.S.D., (Com. App.) 234 S.W. 1090.

6.

Under Section 3 of Article VII, as amended, and Article 2784e, V.A.C.S., only those persons who are "qualified property tax-paying voters" are entitled to vote at maintenance and bond tax elections in school districts.

In 1932, the Constitution was amended by addition of Section 3-a to Article VI; this sections reads:

"When an election is held by any county, or any
number of counties, or any political subdivision of the
State, or any political sub-division of a county, or
any defined district now or hereafter to be described
and defined within the State and which may or may not
include towns, villages or municipal corporations, or
any city, town or village, for the purpose of issuing
bonds or otherwise lending credit, or expending money or
assuming any debt, only qualified electors who own tax-
able property in the State, county, political sub-division
district, city, town or village where such election is held,
and who have duly rendered the same for taxation, shall
be qualified to vote and all electors shall vote in the
election precinct of their residence."

In 1937, this department advised the State Superintendent that
a maintenance tax election in a school district was one relat-
to "expending money" within the Section 3-a, supra. (Vol. 378,
page 991, Letter Opinions). We concur. The holding is in
consonance with the broad meaning assigned to the language of
the provision in the case, City of Richmond v. Allred, 123
Texas, 365, 71 S.W. (2d) 233.

Our opinion O-3350 deals with the subject of qualifications
of voters under Section 3-a, Article VI, and Section 3 of
Article VII in school bond elections. The same rules apply
in maintenance tax elections in school districts. A copy
of the opinion is enclosed.

Very truly yours

ATTORNEY GENERAL OF TEXAS

s/ Gaynor Kendall

By

  Gaynor Kendall
  Assistant

GK:ms;djm/cg
Enclosure
4-13-53

APPROVED AUGUST 23, 1946
s/ Wm. J. Fanning
ACTING ATTORNEY GENERAL OF TEXAS

APPROVED OPINION COMMITTEE By JAE, Chairman